309 A.2d 15.

STATE *vs.* STEPHEN I. RIFFKIN.

AUGUST 23, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

Doris, J. This is an indictment charging the defendant with a violation of G. L. 1956 (1969 Reenactment) §11-41-4. The specific charge was that the defendant, by means of false pretenses with intent to cheat and defraud, unlawfully, knowingly, and designedly obtained and stole $9,300 from one, Cecelia Bessette. The case was tried to a Superior Court justice and a jury which found the defendant guilty as charged. It is before us on the defendant's bill of exceptions to certain rulings of the trial justice. In his bill of exceptions the defendant alleges that the trial justice erred in denying the defendant's motion for a directed verdict and his motion to dismiss the indictment. However, during oral argument, the defendant specifically waived the second assignment of error. We are therefore concerned only with the contention that the trial justice erred in denying the motion for a directed verdict.

Cecelia Bessette, the complaining witness, was 26 years of age and a resident of Warwick at the time of the alleged offense. She testified that she met defendant at a Providence nightclub in February of 1968, but that she had observed him previously on several occasions in a liquor store which he owned and operated in the city of Providence. Cecelia testified that from February to May of 1968 the parties saw each other approximately three times

weekly, for the most part at her Warwick apartment, and that during this period defendant continually stated that he was nervous and upset, that he was heavily in debt and in fear of losing his business. Cecelia further testified that in April defendant told her that he was in love with her.

Cecelia further testified that on April 28, 1968, at defendant's request and on his promise to repay the loan in two weeks, she loaned defendant the sum of $2,300. She also testified that defendant never repaid the loan. The defendant claimed otherwise.

Immediately following the receipt of $2,300 on April 28, 1968, defendant proposed marriage to Cecelia. She accepted and they made plans to apply for a marriage license. On May 7, 1968, defendant told Cecelia he needed an additional amount of money to pay off his debts. On the same day, defendant and Cecelia drove to Seekonk, Massachusetts, and applied for a marriage license. They were advised that a license could not be issued until they submitted to a pre-marital blood test and the results therefrom were obtained. They arranged to be married three days later in Seekonk. On the following day, May 8, according to Cecelia, she and defendant went to the office of a Providence physician who administered the aforementioned blood tests to each of them. She testified that they then drove to a bank where she withdrew $7,000 from her savings account and turned the money over to defendant. The defendant promised to repay her within four months. Cecelia further related that defendant then drove her to her apartment, where she was to await his return from the Department of Health with the results of the blood tests. It appears that defendant never did take the blood tests to the Department of Health.

Late in the same afternoon, defendant returned to Cecelia's apartment and told her that he could not marry

her. Initially, he offered no explanation for his refusal to proceed with the proposed marriage, but subsequently told her that it was due to his mother's disapproval. Finally, Cecelia testified that defendant discontinued his visits and that after many unsuccessful efforts to contact him, she filed a complaint with the Providence Police Department. On July 11, 1968, defendant was arraigned on the complaint, and it is assumed, although on this part the transcript is silent, that he was released on bail. The defendant then visited Cecelia and promised to repay the money. Cecelia, apparently appeased by his promises and in hope of reconciliation, withdrew the complaint against defendant. Following withdrawal of the complaint, defendant did not visit or contact Cecelia nor did he keep his promise to repay the money. Cecelia thereupon filed a second complaint in September 1968. As a result of this second complaint, defendant was indicted by the grand jury. As heretofore stated, a jury trial ensued in the Superior Court, and it is to defendant's exception to the trial justice's denial of a directed verdict at the trial that we now direct our attention.

The defendant urges that we include the comments made by the trial justice in deciding his motion for a new trial when we consider his claim of error by the trial justice in denying his motion for a directed verdict. In deciding the motion for a new trial the trial justice commented:

> "I have said that had I tried this case jury-waived, I would not have found the defendant guilty, and that is so. I viewed this evidence as not strong enough to support a conviction beyond a reasonable doubt — were I trying the case myself and determining the facts — but I can't say that there's anything before me which would permit me to fault the jury, which I would have to do to turn over this verdict."

The defendant contends that by these comments, the

312

trial justice indicated that in his opinion the evidence failed to support a conviction beyond a reasonable doubt. The defendant next states that the only legal steps that intervened between the motion for a directed verdict and the motion for a new trial were argument of counsel, the charge to the jury, and deliberation by the jury. The defendant next reasons that if, while considering a motion for a new trial, the trial justice felt that the evidence could not support a conviction beyond a reasonable doubt, a fortiori he should have been so persuaded when considering defendant's motion for a directed verdict.

In his brief, defendant explicitly states that the criterion to be applied in considering a motion for a directed verdict, the prosecution and defense both having rested, is clearly guilt beyond a reasonable doubt. Thus, he concludes that since the trial justice was of the opinion that the evidence was not strong enough to support a conviction beyond a reasonable doubt, it necessarily follows that the motion for a directed verdict should have been granted. The defendant in reliance on such a premise clearly is in error since the criterion to be applied in considering a motion for a directed verdict is not guilt beyond a reasonable doubt. It is a well-settled rule in this jurisdiction that in considering a defendant's motion for a directed verdict in a criminal case, the trial justice must give full credibility to the state's evidence, view it in the light most favorable to the state, and draw therefrom every reasonable inference consistent with guilt. Neither the credibility of the witnesses nor the weight of the evidence is before the court. *State* v. *Amado,* 109 R. I. 53, 280 A.2d 324 (1971); *State* v. *Murphy,* 107 R. I. 737, 271 A.2d 310 (1970); *State* v. *Contreras,* 105 R. I. 523, 253 A.2d 612 (1969).

In the instant case, the trial justice, realizing that he was limited to viewing the evidence in the light most favorable to the state, followed the rule as previously stated,

and held that the jury would be warranted in inferring that defendant was guilty. We find no fault with this ruling.

A motion for a directed verdict by the defendant in criminal cases denies the sufficiency of the evidence and challenges the state's right to go to the jury. *State* v. *Lisi*, 105 R. I. 516, 253 A.2d 239 (1969). In reviewing the evidence in the case at bar, the trial justice determined that the state of the evidence was such as to be enough to warrant a submission of the case to the jury, although in his words "barely" enough. He found that he was unable to determine as a matter of law that there was no basis upon which a jury might draw the inference necessary to support a conviction. We agree with his finding.

It is established, therefore, that there existed a proper question for submission to the jury, and we are accordingly persuaded that the trial justice did not err in denying the defendant's motion for a directed verdict.

The defendant's exception is overruled, and the case is remitted to the Superior Court for further proceedings.

Mr. Justice Joslin did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Edward E. Dillon, Jr.,* Special Asst. Attorney General, for plaintiff.

*Rogers and Sarault, Charles J. Rogers, Jr.,* for defendant.