319 A.2d 342.

STATE *vs.* THEODORE MORETTI.

MAY 20, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. A Superior Court jury found the defendant guilty of a criminal complaint charging him with creating a false alarm of fire. The trial justice imposed a ten-day jail sentence. The defendant's appeal concerns two points: (1) the denial of the defendant's motion for a judgment of acquittal; and (2) the trial justice's refusal to allow defense counsel to show that a prosecution witness was confused as to the identity of a witness who had testified for the defense.

The events of this case evolve from the 1972 Fourth of July celebration as it was observed in the South Provi-

dence section of our capital city. The area was being plagued by a rash of false fire alarms and many incidents in which the unauthorized opening of hydrants caused torrents of water to cascade onto the public highways. The celebrants, so-called, were apparently oblivious to the fact that the open hydrants imperiled the strength of the water pressure that is needed to extinguish a conflagration in an expeditious and safe manner.

In the very late evening hours of July 3, 1972, three members of the Providence Police Department's Tactical Bureau were patrolling a four-block area in an unmarked police car. The officers were Patrolmen James L. O'Connell, Jr., Normand G. Marchand and John Zincone. Zincone was the driver. Just prior to midnight of July 3, Zincone parked the vehicle on the southerly side of Colfax Street so that he and his fellow officers could observe a fire alarm box that was attached to a utility pole situated at the southerly corner of the intersection of Colfax Street and Gordon Avenue. The box, subsequently identified as Box No. 1467, was about 15 to 20 yards east of the police vehicle.

At trial, Officer O'Connell testified that about 12:15 a.m. of the Fourth "* * * the defendant, came up to the box, looked, and pulled the door on the box, pulled the door down and pulled the hook." When the hook was pulled, Marchand left the vehicle and ran after the puller. He chased him northerly on Gordon, and westerly on Gallup. O'Connell and Zincone drove to the box. O'Connell heard the mechanism within the box "winding." He then joined the pursuit and followed Marchand as the chase proceeded along Gallup. They followed their quarry up the front stairs, through an open door and into the first floor of a home located at 190 Gallup. After the officers entered the residence, O'Connell heard a noise in a closet. He opened the closet door and there was Moretti. Both officers posi-

tively identified Moretti as the person who had pulled the alarm. The Colfax-Gordon intersection and surrounding area were described as being well-illuminated.

The officers and Moretti returned to Box 1467. There they met the men of Engine 10. The lieutenant in charge of the apparatus was resetting the alarm. The records of the Providence Fire Department indicate that the alarm in Box 1467 was sounded on July 4 at 12:14 a.m. and just two minutes later, at 12:16 a.m., Engine 10 radioed headquarters from the corner of Colfax Street and Gordon Avenue that it was back in service and ready for duty.

Moretti argues before us, as he did in the trial court, that a judgment of acquittal should have been entered because of the state's failure to prove that the 12:14 a.m. alarm was false. He contends that the only evidence which could conceivably demonstrate the falsity of this alarm is that of Engine 10's two-minute return to service. He takes the position that if the firefighters had spent more than 120 seconds in the area, it is possible that they might have discovered the fire which could have been the cause of the alarm. We cannot agree.

A motion for judgment for acquittal is made pursuant to Rule 29 of the Superior Court's Rules of Criminal Procedure. It supplements what in pre-rule times was called a motion for a directed verdict. The standard to be used in applying the motion for judgment of acquittal is identical to that which was employed when a motion for a directed verdict was made. The trial justice must view the evidence in a light most favorable to the prosecution, give full credibility to the prosecution's witnesses, and draw from the evidence every reasonable inference consistent with guilt. *State* v. *Rose*, 112 R. I. 402, 311 A.2d 281 (1973); *State* v. *Riffkin*, 112 R. I. 308, 309 A.2d 15 (1973).

The prosecution, of course, is bound to establish guilt

216

by the beyond-a-reasonable-doubt standard. Nevertheless, there is no constitutional mandate that a defendant's guilt must be proved beyond *all* doubt. Jurors are not required to leave their common sense at home when they come to the courthouse. There was ample evidence which gives rise to a reasonable inference that Moretti had pulled a false alarm.

Officer Marchand told the jury that he saw no fires in the area. Furthermore, flight can be considered as evidence of guilt. *State* v. *Carraturo*, 112 R. I. 179, 308 A.2d 828 (1973); *State* v. *Ouimette*, 110 R. I. 747, 298 A.2d 124 (1972). It may be that Moretti's midnight dash from the alarm box to the closet was a manifestation of a childhood fear of red fire trucks and screeching sirens that causes an infant to run home and seek his mother's sheltering comfort. Or, Moretti might have suffered a momentary lapse of memory—clearly, he forgot the rule usually first heard during one's schooldays which states that the person who pulls a fire alarm should remain at the box so that he can direct the responding apparatus to the scene of the fire. Such suppositions are possibilities but on this record they are pure fantasies. Once the men of Engine 10 reached Box 1467, it was obvious to them as it was to the jury that the 12:14 a.m. alarm was false.

The denial of Moretti's motion for acquittal was correct.

In his testimony, Officer Marchand said that as he chased Moretti into the first floor premises at 190 Gallup Street, he saw an individual sitting on the front steps. During the presentation of Moretti's defense, it developed that the sitter was one Raymond O'Mara and that he had been charged with obstructing the officers in the performance of their duty. O'Mara's brother Gerald appeared in Superior Court and testified in Moretti's defense. Officer Marchand was assisting the prosecutor in presenting the state's case against Moretti. The defense summoned Mar-

chand to the stand and attempted to show that he was confused as to the identity of the brothers O'Mara. Moretti claims that he wanted to show that at trial it became apparent that the officer thought the O'Mara who appeared in court was the O'Mara who had been sitting on the front steps. Moretti claims that if Marchand was mixed up as to which brother sat and which brother testified, the officer could have been confused as to the identity of the individual who made a post-midnight appearance alongside Box 1467.

Even if Officer Marchand was confused as to which brother was sitting on the front steps, the materiality of such testimony is a question that is directed to the sound discretion of the trial justice. *State* v. *Rezendes,* 111 R. I. 169, 300 A.2d 472 (1973); *State* v. *Glass,* 107 R. I. 86, 265 A.2d 324 (1970). Here, there is no evidence of any confusion by either officer as to who pulled the box, whom they chased, and who was in the closet—it was Moretti. The refusal of the trial justice to permit the defense to explore this issue was warranted.

The defendant's appeal is denied and dismissed.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline,* for defendant.