339 A.2d 259.

STATE *vs.* STEVEN J. HOWARD.

JUNE 11, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is an indictment charging the defendant, Steven J. Howard, with the commission of rape in violation of G. L. 1956 (1969 Reenactment) §11-37-1. Trial was held to a Superior Court justice sitting with a jury. The jury returned a verdict of guilty against the defendant. The defendant's motion for a new trial was denied, and he was sentenced to a term of 10 years at the Adult Correctional Institutions. On defendant's motion to reduce sentence, he was sentenced to the Adult Correctional Institutions for a term of 5 years and in addition thereto was sentenced to said Adult Correctional Institutions for an additional term of 5 years; the latter sentence was suspended, and the defendant was placed on probation for a period of 5 years to commence upon his release from the Adult Correctional Institutions on the original 5-year sentence. The case is before us on the defendant's appeal from the judgment of conviction.

The record indicates that the prosecutrix, Joyce B, was unmarried and 16 years of age on April 13, 1971, the date of the alleged incident. She was residing with her mother and a 19-year-old brother in the city of Cranston.

Joyce testified that at about 12:30 p.m. on April 13, she and a girl friend, Marianne, were driven to Fall River, Massachusetts, by Marianne's father. At approximately 1:30 p.m., while standing outside a laundry in Fall River, they saw a car in which there were four men. The men were Kenneth Blais, Roger LaPointe, a man known as

Carlton, and defendant Howard. Joyce stated that she had met defendant and Blais on an earlier occasion. The men invited the girls to go for a ride with them. Marianne refused, but Joyce accepted and seated herself in the back seat between defendant and LaPointe. After driving for about 20 minutes, during which time the men were drinking beer, it was decided to go to LaPointe's summer cottage in Tiverton, Rhode Island. When the group arrived at the cottage, they gained entry by opening a screened window with a knife. Once inside. the men proceeded to drink more beer; defendant and LaPointe then left to replenish the beer supply. The prosecutrix testified that during the absence of defendant and LaPointe, Blais and Carlton made some fresh remarks to her which she ignored, and that after about 30 minutes defendant and LaPointe returned with a supply of beer.

Joyce stated that she then requested LaPointe to drive her back to Fall River, but he refused. She also asked defendant to drive her, but instead he led her into the bedroom and made advances to her. She stated that she pushed away from defendant and attempted to leave the bedroom, but the other three men came in, backed her into a corner, and threatened to beat her with canes, which they were holding, if she did not cooperate with them. She testified that at that time she was fearful the men would kill her if she resisted them.

The men then proceeded to take off her clothing, all the while continuing to threaten her with the canes. The prosecutrix testified that the four men including defendant then forced sexual intercourse upon her, in addition to other sexual activities. She further testified that by this time she was hysterical. They all departed from the cottage around 6 p.m., and the men let her out of the car in Fall River at approximately 6:30 p.m. Within 5 minutes she told Marianne what had happened, and they in

turn spoke by telephone to Joyce's mother; the police were then notified.

The defendant, Howard, testified that he had met Joyce on a previous occasion and that he was in the car with the other men when Joyce accepted the invitation to join them on April 13, 1971, but that after driving around for a short time he was dropped off around 3 p.m. He then went to the Drug Center in Fall River, and the last time he saw Joyce that day she was driving off in the car with the other men.

I

The defendant first argues that the trial justice erred in denying his motion for judgment of acquittal. The defendant moved for judgment of acquittal at the close of the state's case and again at the close of his own case.

The rule is well established that no exception lies to the denial of a motion for judgment of acquittal made at the close of the prosecution's case. *State* v. *Franklin,* 103 R. I. 715, 241 A.2d 219 (1968). We consider, then, only defendant's appeal from the denial of his motion made at the close of his case. In considering a motion for judgment of acquittal, the trial justice must view the evidence in a light most favorable to the prosecution, give full credibility to the prosecution's witnesses, and draw from the evidence every reasonable inference consistent with guilt. *State* v. *Moretti,* 113 R. I. 213, 319 A.2d 342 (1974); *State* v. *Rose,* 112 R. I. 402, 311 A.2d 281 (1973); *State* v. *Riffkin,* 112 R. I. 308, 309 A.2d 15 (1973). The defendant concedes that this is the standard applicable in deciding motions for judgment of acquittal, and it was the standard applied by the trial justice in ruling on the motion.

The defendant bases his claim of error on the alleged failure of the trial justice to review the evidence pertain-

ing to rape. As indicated above, the trial justice followed the rule and stated:

"But applying the rule and viewing the evidence in the light most favorable to the state, we have the testimony of Miss B. She impressed me as she testified. We have the testimony of the various witnesses, including the defendant, that he was elsewhere on the date in question. Each time Miss B testified, she talked about four people in the car, out to the cottage, at the cottage, and all the rest of it, and viewing the evidence in the light most favorable to the state, which I must do, there was certainly sufficient evidence before the jury so that they could find that the defendant here, Mr. Howard, was at the cottage at the time the alleged rape took place.

"There isn't any question in the Court's mind that there was more than sufficient evidence on the question of her being raped. The main issue was whether or not this defendant was present, and if the jury chose to believe the victim, so-called, then there was enough evidence on the record for them to find the defendant guilty as charged."

The defendant points out that in order to constitute rape, the carnal act must have been committed against the resistance of the woman. He argues that there is no evidence that the victim resisted or even attempted to resist, and therefore the trial justice erred in not granting defendant's motion for judgment of acquittal. It is true that the trial justice commented only briefly on the evidence pertaining to rape.

We have recently said that although force is an essential element of the crime of rape, the application of force is not necessary if there is a threat of force potentially sufficient to cause death or serious bodily harm. Where there is evidence of force or a threat of force, the question of resistance on the part of the female must be considered. The degree of resistance which will exclude the conclusion or inference that the female gave her consent is only that

resistance to the force of the defendant as seems reasonable to offer under the circumstances, including the relative strength of the parties, the age and condition of the female, the uselessness of resistance, and the degree of force manifested. *State* v. *Verdone*, 114 R. I. 613, 337 A.2d 804 (1975), citing 1 Wharton, *Criminal Law & Procedure* §§307, 308 (1957).

The transcript indicates that the prosecutrix testified that she had been raped by four men, including defendant. Testimony was also elicited from other witnesses in relation to commission of rape. There was no evidence denying the commission of rape.

The trial justice, viewing all the evidence in the light most favorable to the state and drawing all reasonable conclusions therefrom, properly denied defendant's motion for judgment of acquittal and submitted to the jury the question of whether rape had been committed. *State* v. *DeGregory*, 113 R. I. 434, 322 A.2d 52, 56 (1974); *State* v. *Amado*, 109 R. I. 53, 56, 280 A.2d 324, 326 (1971).

## II

The defendant contends that the trial justice committed reversible error when he denied defendant's motion for a mistrial based on a question asked by the prosecutor. During redirect examination, the prosecutor asked the following question:

> "Now, Joyce, after your conversation with Mr. Needham [defendant's attorney] in my presence, did he indicate whether or not he believed your story?"

The defendant's motion for a mistrial was based on his contention that the question created prejudice as it left the clear impression that defendant's attorney told the prosecutrix that he believed her story. In the absence of the jury, the trial justice, after hearing arguments from both sides as to whether the question was prejudicial, con-

cluded that there was no prejudice and denied defendant's motion. The issue of whether a mistrial should be granted is directed to the sound discretion of the trial justice. We are not persuaded that the question objected to by defendant created prejudice sufficient to deprive defendant of a fair trial, and therefore find that the trial justice did not abuse his discretion in denying defendant's motion for a mistrial.

## III

The defendant further contends that the trial justice erred in denying defendant's motion for a new trial, arguing that the trial justice clearly misconceived the evidence as it related to which of the men threatened the prosecutrix with canes. In order to prevail in such a situation, defendant must show that the trial justice was clearly wrong or that in reviewing the evidence, he overlooked or misconceived relevant and material evidence relating to a controlling issue. *State* v. *Lima,* 113 R. I. 6, 316 A.2d 501 (1974); *State* v. *Wiggin,* 106 R. I. 69, 256 A.2d 219 (1969).

The defendant does not claim that the evidence allegedly misconceived by the court related to a controlling issue. The record indicates that the prosecutrix testified she had been disrobed and had been forced to have sexual intercourse with the four men, including defendant. That testimony clearly establishes sufficient evidence for the jury to determine that rape had been committed. The trial justice therefore did not err in denying defendant's motion for a new trial.

## IV

The defendant next contends that the trial justice erred in allowing the prosecutrix to testify as to what she said to her girl friend and her mother upon her return to Fall River. The prosecutrix was permitted to testify as

to what she said about 35-40 minutes after the alleged incident. The defendant argues that such testimony should not be considered as an excited utterance because of remoteness. The trial justice ruled the testimony admissible as an excited utterance.

In *State* v. *Vaccaro,* 111 R. I. 59, 62-63, 298 A.2d 788, 790 (1973), we said that

> "Spontaneous exclamations may be admitted under the excited utterance exception to the hearsay rule even if not strictly contemporaneous with the exciting cause if, from a consideration of all the facts in the case, it appears that the declarant, when he spoke, was still laboring under the stress of the nervous excitement engendered by the event he describes. *State* v. *Mancini,* 108 R. I. 261, 274 A.2d 742 (1971). * * * We have rejected any approach to the determination of what constitutes a spontaneous utterance strictly on the basis of the lapse of time which occurs between the incident and the utterance. 'The crucial question is whether from a consideration of all the facts the trial justice is satisfied the declarant was still laboring under the stress of the nervous excitement when, as in this case, she spoke.' *State* v. *Nordstrom,* 104 R. I. 471, 476, 244 A.2d 837, 840 (1968)."

The prosecutrix spoke to her girl friend some 5 minutes after leaving the automobile and 35 to 40 minutes after leaving the cottage where the alleged incident had occurred. It is certainly possible that the prosecutrix was still under the stress of nervous excitement and equally possible that sufficient time had not elapsed to enable her to make up any story concerning what had taken place.

In the circumstances, we are unable to say that the trial justice abused his discretion in admitting the statement of the prosecutrix as an excited utterance exception to the hearsay rule.

## V

The defendant next alleges that the trial justice erred in permitting Detective Moffatt to testify that no attempt was made to run a comparison test. The defendant argues that the jury could easily have been left with the impression that the comparison test was not made because defendant had failed to cooperate, and that this testimony was therefore prejudicial. The defendant has not specifically directed our attention to how he was prejudiced, nor have we been persuaded that any prejudice accrued to defendant by the admission of the testimony objected to. The defendant's argument is pure conjecture and is without merit.

## VI

The defendant next contends that the trial justice's instructions with respect to burden of proof were prejudicial. The defendant points to that portion of the charge wherein the trial justice stated:

> "Also, I know it isn't necessary that I ask you to do equal and exact justice between the State of Rhode Island and this defendant, because I know that you will have your verdict in accordance with the facts and will be in accordance with the law as I have given it to you."

He argues that such a statement might have caused the jurors to think that a standard other than proof beyond a reasonable doubt was to apply. The portion of the charge objected to by defendant is not to be considered in a vacuum but must be considered in the context of the charge as a whole. *State* v. *Lima, supra; State* v. *Carraturo,* 112 R. I. 179, 308 A.2d 828 (1973).

The record indicates that the trial justice, just prior to the language objected to by defendant, had given a clear statement of the law as it related to burden of proof, and taken as a whole the charge cannot be said to be mislead-

ing to a jury of ordinarily intelligent lay persons. The instructions given as to the burden of proof were not prejudicial to defendant.

## VII

The defendant next alleges that the trial justice erroneously instructed the jury as to law relating to force in a rape case.

The language objected to by defendant was a portion of a supplemental charge given by the trial justice. It reads as follows:

> "Secondly, I might state that in my charge to you as to the question of incapable of resistance through fear, that if you find that to be the case, it isn't necessary that you find he to be the one who may have placed Miss B, if you find she was in fear. It is the overall picture as it appeared to her on that April afternoon in that cottage in Tiverton. So that, it's the entire picture, the number of people that were there and so on, that are the factors for you to consider on the question as to whether or not she may or may not have been placed in fear."

The defendant concedes, however, that the trial justice's charge made earlier to the jury adequately stated the law and made it clear that the lack of physical harm to the prosecutrix could not, by itself, indicate consent. That portion of the charge reads as follows:

> "Resistance, now on that question, on the date in question, it was the duty of Miss B to use all means within her power consistent with her safety to prevent the defendant from accomplishing his designs when said alleged assault was made upon her. If, however, she was incapable of resistance through fear or if resistance was entirely useless, there might be rape if no resistance was in fact made. It is to be expected that resistance will be made unless the mind of the woman is so overcome by fear that she is incapable of resistance or unless there is such an exhibition of brute force as to make resistance useless or impossible.

"Now, another way of stating the rule is that the consent of the woman from fear of personal violence is void and of no effect whatsoever, and though a man lays no hand on a woman, yet if by an array of physical force he so overpowers her that she dares not resist, his carnal intercourse with her is rape."

The defendant argues that the supplemental instructions overemphasized the possibility that the prosecutrix had consented by fear of brute force with the result that the jury could easily decide that merely because there were four men present she was reasonably in fear of brutal force. We disagree. The supplemental charge merely made it clear to the jury that it was not necessary to find that defendant had solely and personally placed the prosecutrix in fear, if it found her placed in fear in light of all the circumstances. A reading of the supplemental charge in context with the full charge indicates that it was not misleading to the jury, and that defendant was not prejudiced by the trial justice's charge.

## VIII

We now move to defendant's contention that a remark by the trial justice during the reading of stenographic notes by the court reporter was prejudicial error. It appears that at the jury's request certain portions of the prosecutrix' testimony were read to the jury by the stenographer. During the reading by the stenographer, the trial justice remarked, "There, that ties it in," or words to that effect. This statement does not appear in the transcript but is contained in an affidavit by the prosecutor, which under the circumstances we will accept as an accurate statement of the remark made by the trial justice.

The defendant, while conceding that it is impossible to establish the true, exact meaning of what the trial justice said, nevertheless argues that it is reasonable to conclude

that it could be interpreted to mean that the trial justice felt that the prosecutrix' testimony fit together and was not inconsistent. The defendant directs our attention to the decision of the trial justice on his denial of defendant's motion for a new trial and argues that his conviction that the prosecutrix was telling the truth was transmitted, even though unconsciously, to the jury by the statement complained of. The standard to be applied by us in reviewing the charge is how it would be interpreted by a jury composed of ordinarily intelligent lay persons. *State* v. *Sliney,* 101 R. I. 423, 224 A.2d 603 (1966).

The state argues that a reasonable interpretation of the remark by the trial justice would be that it merely indicates that the stenographer had read the portions of the records as requested by the jury. It is our opinion that in the circumstances in which the remark was made, a jury composed of ordinarily intelligent lay persons listening to it could not have been led into believing that the trial justice was instructing them that the prosecutrix' testimony fit together and was not inconsistent. The remark by the trial justice therefore does not constitute prejudicial error.

The defendant's appeal is denied and dismissed, the judgment appealed from is sustained, and the case is remanded to the Superior Court.

*Julius C. Michaelson,* Attorney General, *William G. Brody,* Special Asst. Attorney General, for plaintiff.

*Strauss, Factor, Chernick & Hillman, Stephen B. Lang,* for defendant.