**375 A.2d 212.**

STATE *vs.* CARMINO DISTANTE.

JULY 5, 1977.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

Doris, J. This is an appeal from a judgment of conviction entered after the defendant, Carmino Distante, was adjudged guilty by a jury in Superior Court of conspiracy to commit robbery in violation of G.L. 1956 (1969 Reenactment) §11-1-1.

The defendant had moved for a judgment of acquittal in accordance with Super. R. Crim. P. 29 after the state presented its case-in-chief. This motion was denied, as was the renewed motion for judgment of acquittal, after presentation of evidence by defendant.[1] When the jury returned a verdict of guilty defendant moved for a new trial, and this motion was also denied. It is from the denial of these motions, as well as from the admittance of certain allegedly prejudicial evidence, that defendant now appeals.

---

[1]Although the record shows only that the trial justice in Superior Court reserved his decision on this second motion for judgment of acquittal, we presume that it was later denied in view of the briefs of the parties as well as the justice's later denial of a motion for a new trial.

The record indicates that between 10:30 and 11 a.m. on February 5, 1973, Mrs. Lauris Katzman of Smithfield was badly beaten in the doorway of her home by a black man who was unknown to her at the time. He was subsequently identified as James H. Ashley, Jr., who is the codefendant in this conspiracy indictment along with Carmino Distante.[2]

Mrs. Katzman testified that Ashley had parked his car in the Katzman driveway and, when she heard no sound and nobody came to her door, she came out of her house to investigate. She saw Ashley near her garage door and inquired as to his reason for being there. He said that he was looking for her husband, and she went into her house to get her husband's business phone number. When she went outside again to give Ashley the number, he grabbed her, beat her, and attempted to drag her into the house. He was frightened off by a teenager who was passing by, and he abruptly backed his car out of the driveway and sped away. Ashley's picture was positively identified by Mrs. Katzman, as well as by a passing motorist, and all the witnesses also indicated that he was alone in the car. The car was described as being a green, 1965 Buick Skylark with Rhode Island registration HP223.

The state first tried to connect Distante with this crime by putting Ashley on the witness stand. However, after admitting that he was "residing" at the Adult Correctional Institutions and that he had met Distante, who was a friend of his employer, Ashley refused to answer any further questions. Since he was no longer able to invoke

---

[2]Ashley was indicted on a total of four counts including: assault with a dangerous weapon; assault with intent to murder; entry of a dwelling with intent to rob; and conspiracy to commit robbery. He pled nolo contendere on all four counts and was sentenced to serve time in the Adult Corectional Institutions. Distante was only named on the fourth count, the one charging conspiracy to commit robbery.

his fifth amendment privilege (see note 2, *supra*), he was then cited for contempt. The state was thus forced to resort to circumstantial evidence in its attempt to link Distante to Ashley and the crime.

Henry Padula, who along with Ashley was an employee of Broad Street Motors, was then called to testify as to the events of the morning of February 5, 1973. He identified a picture of a car, which was subsequently also identified as being the car Ashley drove to the Katzman house, as being his car. He testified that he loaned the car to Distante that morning around 9:30 a.m., after Distante emerged from a brief meeting with Ashley and Samuel Weinberg, the owner of Broad Street Motors, in Weinberg's office. Padula stated that Distante then drove off with Ashley accompanying him as a passenger, with Weinberg following in his own car. According to Padula, the three returned around 12:30 p.m. in the two cars, with Distante again being the driver in Padula's car, and Ashley the passenger. Padula's car had been dirty when it was borrowed, but it had been thoroughly cleaned before it was returned, and Distante gave Padula some money for the gas that had been used.

The only other testimony which the state relied on in its attempt to link Distante to the crime was given by Mr. Abbott Katzman, husband of the victim. Mr. Katzman testified that he and Distante had entered into a contract in April 1972, whereby Distante was to purchase a used truck crane from Katzman for $17,500. A bill of sale was executed a few days later in the basement of Katzman's home (which also served as his office), and Distante paid $2,500 of the purchase price. Katzman stated that he filed the bill of sale in a drawer in his basement office and that Distante saw him do so. Distante took possession of the crane but the balance of the purchase price was

never paid and Katzman retained an attorney to collect the balance that was owed.[3]

Katzman also testified that prior to February 5, 1973, he had never met James Ashley. Mrs. Katzman also testified that she had never seen Ashley before he attacked her on February 5, 1973.

Although defendant made two motions for judgment of acquittal, one after the state's case-in-chief, and the other at the close of all the evidence, it is only with the second motion that we are now concerned. The objection to the denial of the first motion was waived when defendant did not rest but instead presented his own evidence. *State* v. *Grullon,* 117 R.I. 682, 371 A.2d 265 (1977); *State* v. *Colavecchio,* 111 R.I. 428, 303 A.2d 760 (1973); Super. R. Crim. P. 29. "Such a motion is addressed to the trial justice's discretion and no exception lies to its denial." *State* v. *Colavecchio, supra* at 431, 303 A.2d at 762.

As to the second motion for judgment of acquittal, we have often stated the standard for considering this motion which challenges the sufficiency of the evidence to support a verdict of guilty beyond a reasonable doubt.

> "In a criminal case the trial justice, in passing on such a motion, is required to give full credibility to the state's evidence, view it in a light most favorable to the state, and draw therefrom every reasonable inference consistent with guilt. However, where the evidence adduced by the state and the reasonable inferences to be drawn therefrom, even when viewed in a light most favorable to the state, are insufficient to establish guilt beyond a reasonable doubt, the court must grant the defendant's motion * * *." *State* v. *Rose,* 112 R.I. 402, 406, 311 A.2d 281, 283 (1973).

---

[3]The defendant's testimony, as well as testimony by other defense witnesses, conflicts with Katzman's and Padula's testimony. However, since we must view the testimony in the light most favorable to the state when we review a motion for judgment of acquittal, this conflict is of no real consequence.

*Accord, In re Calderone,* 115 R.I. 316, 322, 345 A.2d 871, 874 (1975); *State* v. *Moretti,* 113 R.I. 213, 215, 319 A.2d 342, 343 (1974).

The defendant argues that this standard is not strict enough in a case resting upon circumstantial evidence, since *State* v. *Montella,* 88 R.I. 469, 149 A.2d 919 (1959), requires that in such a case, the proof must not only be consistent with guilt, but must also exclude all reasonable hypotheses of innocence. The state argues that this "Montella rule" or "circumstantial evidence rule" has been laid to rest by some of our more recent decisions. *See State* v. *Aurgemma,* 116 R.I. 425, 435 n.6, 358 A.2d 46, 52 n.6 (1976). However, since we find that the state failed to present evidence which could meet its burden of establishing guilt beyond a reasonable doubt, we need not consider the continued viability of this rule. Also, we therefore need not consider defendant's other grounds for appeal, including his motion for a new trial, and his contention that prejudicial evidence was admitted at trial.

The crime of conspiracy involves a combination of two or more persons to commit some unlawful act or to do some lawful act for an unlawful purpose, and the offense is complete once the agreement is made. *State* v. *Giorgi,* 115 R.I. 1, 339 A.2d 268 (1975). Anyone who knows of the conspiracy and intentionally takes part or does any act to further the illegal agreement becomes a participant. *Id.* We have also stated that direct evidence is unusual and not necessary to prove a conspiracy. "The illegal confederacy may be inferentially established by proof of the relation, conduct, circumstances and acts of the parties." *State* v. *Gilman,* 110 R.I. 207, 218, 291 A.2d 425, 432 (1972). The question, then, is whether all the evidence, when viewed in a light most favorable to the state, could establish beyond a reasonable doubt a conspiracy between defendant and James Ashley. We do not think so.

The evidence indicates that defendant and Ashley left Broad Street Motors in Padula's "dirty" Buick at about 9:30 a.m. on February 5, 1973, and returned together in the Buick at about 12:30 p.m. During this time Mrs. Katzman was brutally assaulted at her house by Ashley, who was alone at the time of the assault. Ashley may have had blood splattered on him which would account for the cleaning of the Buick before its return. The defendant who owed money to Mr. Katzman from the sale of the crane, had refused to pay, and Mr. Katzman's records of this transaction were located in the cellar of his home.

From the foregoing, the state advances the theory that Ashley was acting on defendant's behalf in attempting to steal the records of the sale of the truck crane from Katzman's cellar, and also in assaulting Mrs. Katzman. Such an inference appears to us to be purely speculative. It is even unclear from the testimony that Ashley actually intended to rob Mrs. Katzman when he assaulted her.

There is no evidence that defendant and Ashley were acting in concert and nothing in the record that indicates some agreement between them or some past business or social relationship between them. In fact there is no evidence of any prior dealings between defendant and Ashley. Nor is there any evidence which connects defendant to Ashley's actions of February 5, 1973, except that they left and returned to Broad Street Motors together. Of course Ashley could have supplied the answers to these questions but, unfortunately, he refused to testify, and the state was without its key witness. Without Ashley's testimony as to his relationship with defendant, it was mere speculation to conclude that Ashley was acting on defendant's behalf during the three hour interval when they were both away from Broad Street Motors.

Thus the inference to the effect that the defendant and Ashley conspired to rob Mrs. Katzman would, on the

record before us, be conjectural and speculative, rather than reasonable and rational, and proof based solely on conjecture and speculation will not support a conviction. *State* v. *Fortes,* 110 R.I. 406, 409, 293 A.2d 506, 508 (1972). Therefore the trial justice erred in refusing to grant the defendant's motion for judgment of acquittal at the close of all the evidence.

The defendant's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court with instructions to enter judgment of acquittal.

Mr. Chief Justice Bevilacqua did not participate.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*Raymond J. Daniels,* for defendant.