404 A.2d 81.

STATE *vs.* CHARLES J. GIANOULOS.

JULY 27, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. The defendant, Charles J. Gianoulos (Gianoulos), was tried before a Superior Court jury on an indictment that charged him and two others with violating the provisions of G.L. 1956 (1969 Reenactment) §11-4-3, which, insofar as it relates to Gianoulos, provides that anyone who is convicted of aiding or counseling another to burn any building other than a dwelling house shall be imprisoned no less than 2 nor more than 20 years. As we review the evidence presented at a Superior Court jury trial, we shall bear in mind Gianoulos' contention that his "mere presence" at the scene of the crime does not establish his guilt.

During the early morning hours of July 2, 1974, North Providence's Lymansville Volunteer Fire Department, responding to an alarm of fire, extinguished a blaze that destroyed an unoccupied two-family dwelling located at 10 Packard Avenue. Investigators from the State Fire Marshall's Office concluded that the fire was set and that the original ignition point was located in the front part of the house. About a month later, North Providence police arrested Gianoulos, David B. DiIorio (DiIorio), and Keith J. Burke (Burke).

Gianoulos and DiIorio gave written statements to the police. On the other hand, Burke exercised his fifth-amendment right and told the police nothing. In his statement Gianoulos said that at 12:40 a.m. on the day in question, David DiIorio "picked me up on Homewood Avenue" and drove him and Burke "down to Packard Avenue to the house." Just as the trio arrived at Packard Avenue, DiIorio announced that he was "going to set the house on fire." DiIorio and Burke, armed with a small can of gasoline, advanced toward the rear of the house. Gianoulos said that he remained on the sidewalk in front of the house, but when he saw his companions coming toward the street, he returned to the car.

During his testimony, Gianoulos attempted to refute or explain certain parts of his statement. Although he had told the police in his statement that DiIorio had "picked him up," Gianoulos attempted to disabuse the jury of any idea that the pickup was preconceived. He told the jury that he had actually been standing at the corner of Maplecrest and Homewood Avenues in the Fruit Hill section of North Providence when DiIorio and Burke came by in DiIorio's car. He told the jury that before their arrival, he had been discussing with two other friends plans for a New Hampshire camping trip. He explained that DiIorio and Burke joined the group and contributed some input regarding the pro-posed trip, which was scheduled for the very day on which the trio was arrested. Packard Avenue is located in North Providence's Lymansville section. According to Gianoulos, he had no idea whatsoever why they were embarking upon a 10- to 15-minute ride to Lymansville until DiIorio pulled up in front of the house. However, he conceded that DiIorio's invitation for the ride, while made in the presence of the other two individuals with whom the new arrivals were friendly, was limited to him alone. Gianoulos admitted that he took a position in front of the house, but insisted he did absolutely nothing. Once the trio returned to the Fruit Hill area, Gianoulos took his car, which had been parked on Homewood Avenue, and drove over to within a block of the fire and there pulled the alarm which summoned

the Lymansville crew. A member of that crew was DiIorio. Again, Gianoulos conceded that he could have stopped at the Fruit Hill fire station, which was close to the Homewood-Maplecrest intersection, and there sounded the alarm; but he instead spent 10 minutes or so going to Lymansville because he thought that the Fruit Hill station was locked up for the night. Gianoulos attributed his failure to attempt to dissuade DiIorio and Burke from embarking on the incendiary mission and his failure to report their identities to either the police or fire authorities to a fear of reprisal.

A rebuttal witness testified that when he arrived at the scene of the fire, he asked Gianoulos to lend him a hand and Gianoulos, in somewhat terse and direct language, told him that he was not available even though Gianoulos was once a member of the Fruit Hill volunteers.

The trial justice rejected Gianoulos' efforts to picture himself as an innocent bystander when he denied Gianoulos' motion for a judgment of acquittal, which motion was made after the prosecution and defense had completed their presentation of evidence. In assessing the correctness of this denial, we, like the trial court, must, without weighing the evidence or assessing the credibility of witnesses, view the evidence relied upon by the state in the light most favorable to the state, drawing therefrom all reasonable inferences consistent with guilt. *State* v. *Distante*, 118 R.I. 532, 536, 375 A.2d 212, 215 (1977). The state does not quarrel with the proposition that mere presence at the scene, in and of itself, is insufficient to warrant a conviction; but it contends that there is other evidence adduced at trial which, when considered along with Gianoulos' presence, gives rise to a reasonable inference of guilt.

We see no need to detail the evidence to which we have already alluded. Obviously, Gianoulos' erratic course of behavior, plus the limited invitation for a ride and his conduct subsequent to the discovery of the fire, all form a firm evidentiary basis for the belief that Gianoulos, despite his protestations to the contrary, was well aware of the

purpose of the post-midnight motor trip from Fruit Hill to Lymansville and had agreed to do his part as DiIorio and Burke went about the task of spreading the gasoline around the building. Consequently, we cannot fault the denial of the motion for judgment of acquittal.

The second facet of Gianoulos' appeal concerns three incidents at which points the trial justice refused to pass the case and declare a mistrial. After Gianoulos had testified on cross-examination that he had not been with DiIorio since the day of the arrest, the prosecutor asked him if it was not a fact that 2 weeks earlier he had been seated alongside DiIorio[1] in the very courtroom in which Gianoulos' trial was being held. The defense's objection was overruled, and Gianoulos answered in the affirmative. The trial justice ruled that the question was fair game during cross-examination and also pointed out that he would cure any prejudice when he charged the jury. During the charge, the trial justice alluded to the question and admonished the jury that the sole purpose of the prior-courtroom-encounter evidence was to impeach Gianoulos' testimony that he had not seen DiIorio since the arrest and that the jury could draw no other unfavorable inferences from the fact that Gianoulos was in court on an earlier occasion.

Later, when the prosecutor asked Gianoulos if he was aware of any "other fires" in North Providence prior to the Packard Avenue conflagration, the trial justice sustained defendant's objection on the ground that this evidence was totally immaterial. Subsequently, the trial justice instructed the jury that it could draw no inferences whatsoever against Gianoulos because of the reference to other fires.

One of the state's rebuttal witnesses was a brother of one of the firefighters who extinguished the Packard Avenue fire. The witness was asked by the prosecutor whether his brother had told him that when Gianoulos was asked to help at the

---

[1]DiIorio's trial preceded Gianoulos' trial by 2 weeks. The jury returned a guilty verdict against DiIorio. The indictment, as far as it related to Burke, was dismissed for lack of evidence.

fire, Gianoulos ran away. The defense objected immediately, and the question was never answered. The trial justice refused to pass the case, concluding that the jury had not been influenced by the "nature and tone" of the question and Gianoulos had not been prejudiced because the question, even if improper, had not been answered. Thus, the trial justice felt that a cautionary instruction was unnecessary, and none was given. Furthermore, this specific objection became academic when it became obvious that the state had produced the wrong brother as its rebuttal witness. When the right brother appeared, he proceeded to tell the jury about Gianoulos' unwillingness to lend a hand to the Lymansville crew.

As we have said on many prior occasions, motions to pass and declare a mistrial are matters addressed to the sound discretion of the trial justice. As a front-row-seat spectator, he or she is best able to gauge the effect of an allegedly improvident remark heard by the jury. Much of what we have said in this area can be found in *State* v. *Marrapese*, 116 R.I. 1, 7, 351 A.2d 95, 98 (1976). We see no need to extend the discussion in this area, except to say that we have examined the record and see no reason to disturb the actions taken by the trial justice.

In denying Gianoulos' motion for a new trial, the trial justice observed that there was sufficient evidence from which the jury could reasonably infer that Gianoulos was posted at the front of the property for the specific purpose of aiding and abetting DiIorio and Burke "in any way should the necessity arise." Here, the trial justice, like the jury, obviously rejected Gianoulos' assertion that he was totally in the dark concerning the reason why he, DiIorio, and Burke were making the trip to Lymansville.

Gianoulos also contends that even if the trial justice properly assessed the evidence, the motion for a new trial should have been granted on the ground that the jury's verdict was against the law. He bases his contention on the fact that the trial justice in his charge had told the jury that it could not consider Gianoulos' statement unless it was

"satisfied by proof beyond a reasonable doubt"[2] that the police had afforded defendant the four *Miranda* warnings and had also informed him of his right to call off the interrogation at any time he desired. Gianoulos now argues that there is absolutely no evidence that he was told that he could bring the interrogation to a halt just by telling the police that he no longer cared to respond to their questions.

Having in mind that the unobjected-to charge is the law of the case, we believe the lack of information concerning Gianoulos' ability to terminate the questioning was harmless. Since a jury is presumed to follow the trial justice's instructions, we must assume that it disregarded Gianoulos' statement. Further, when Gianoulos testified in direct examination, he gave, in substance, a line-by-line recitation of what he had already told the police. The evidence which gave the broad-based support for the finding of guilt came during his cross-examination and the testimony presented by the Lymansville firefighters who reported DiIorio's presence on the responding truck and Gianoulos' refusal to volunteer to help the volunteers.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.

*Stephen Nugent,* Special Assistant Attorney General, for petitioner.

*Harold I. Kessler, Friedman and Kessler,* for defendant.

---

[2]Since the statement relates to the admissibility of evidence rather than proof of an essential element of the crime, the measure of proof in this jurisdiction has been "clear and convincing evidence" rather than "beyond a reasonable doubt." *See State v. Espinosa,* 109 R.I. 221, 230-31, 283 A.2d 465, 469-70 (1971). Interestingly enough, the Supreme Court has ruled that the admissibility of an in-custody inculpatory statement can be measured by a "preponderance of evidence" standard. *Lego v. Twomey,* 404 U.S. 477, 484, 92 S. Ct. 619, 624, 30 L. Ed. 2d 618, 624 (1972). Earlier this year the Supreme Judicial Court of Massachusetts took the position that while it might be better practice to do so, there is no federal or state requirement which directs the police to advise an accused of his right to terminate his questioning at any time. *Commonwealth v. Lewis,* 374 Mass. 203, 205, 371 N.E.2d 775, 776-77 (1978). The court has compiled a list of jurisdictions that have ruled on this question. All but two are in accord with the Massachusetts view. The two are *State v. Riddict,* 291 N.C. 399, 408, 230 S.E.2d 506, 512 (1976), and *Micale v. State,* 76 Wis. 2d 370, 374, 251 N.W.2d 458, 460 (1977).