413 A.2d 78.

IN RE VINCENT.

MARCH 31, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Weisberger and Murray, JJ.

WEISBERGER, J.   This is an appeal from an adjudication of waywardness by a justice of the Family Court. The adjudication was based upon conduct which, if committed by an adult, would have constituted the crime of receiving stolen goods in violation of G.L. 1956 (1969 Reenactment)

§11-41-2.[1] The facts underlying this proceeding are as follows.

Vincent, who was under the age of eighteen at the time of this alleged offense, was a high-school student. A fellow student, one W.H., owed Vincent some money for certain tires with which Vincent had supplied him. Vincent became more and more pressing in his demands for payment of this debt. Ultimately, Vincent told W.H. that "he knew he could sell a chain saw" if W.H. could get one for him. W.H. testified that following this conversation he stole a chain saw from the garage of his neighbor to whose house his parents had a key.

Thereafter W.H. placed the chain saw in the trunk of his automobile, returned to school, parked the automobile, and told Vincent that the chain saw was in the trunk of his car. W.H. gave Vincent the keys, and Vincent departed. About five minutes later, Vincent returned and, according W.H., said that he had taken the chain saw. Shortly after W.H. arrived at his home, he checked the trunk and found that the chain saw had been removed. That same night W.H. saw Vincent at the home of a mutual friend, and Vincent stated that "he got rid of the chain saw."

After the presentation of the state's evidence, counsel for Vincent moved for judgment of acquittal. The trial justice denied the motion. Thereafter Vincent took the stand and testified that he never received any chain saw from W.H. At the close of all the evidence counsel for Vincent renewed his motion for judgment of acquittal, and the trial justice again denied the motion. The trial justice determined that Vincent

---

[1] General Laws 1956 (1969 Reenactment) §11-41-2 reads as follows:

"Receiving stolen goods—Evidence of knowledge.—Every person who shall fradulently receive any stolen money, goods, securities, chattels or other property, knowing the same to be stolen shall be deemed guilty of larceny, although the person who stole the same may not have been prosecuted or convicted therefor; and the possession of any such stolen property shall be evidence of guilty knowledge by the person having such possession that such property was stolen, except such person shows that it was acquired in the due course of trade and for adequate consideration."

had committed the offense charged and adjudged him to be wayward. The sole issue on this appeal is whether the trial justice erred in denying Vincent's motion for judgment of acquittal at the conclusion of all the evidence.[2] No challenge was raised either in the briefs or in oral argument to the correctness of the ultimate determination of guilt.

Vincent's counsel correctly states that the appropriate test for evaluating a motion for judgment of acquittal is to view the evidence in the light most favorable to the state and to draw from the evidence every reasonable inference consistent with guilt. The trial justice is then required to determine whether under such a test the state has failed to establish guilt beyond a reasonable doubt. *State* v. *Moretti*, 113 R.I. 213, 215-16, 319 A.2d 342, 343 (1974); *State* v. *Rose*, 112 R.I. 402, 406, 311 A.2d 281, 283 (1973); *State* v. *Saulnier*, 109 R.I. 11, 15-16, 280 A.2d 85, 88 (1971). Only if the trial justice determines that in such a frame of reference the evidence is insufficient to be submitted to the trier of fact may he grant a motion for judgment of acquittal. *State* v. *Riffkin*, 112 R.I. 308, 313, 309 A.2d 15, 17 (1973).

The principal thrust of Vincent's appeal lies in the contention that even viewed in the light most favorable to the state and with every reasonable inference consistent with guilt drawn therefrom, the proof is insufficient to establish guilty knowledge beyond a reasonable doubt. Vincent suggests that reliance upon the evidentiary presumption of §11-41-2 violates standards established by the Supreme Court of the United States as to the burden of proof in *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), and further explicated in *Mullaney* v. *Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). These cases establish that the state has the burden of proving each element of the crime beyond a reasonable doubt, and that the burden of persua-

---

[2]The advantage of moving for judgment of acquittal in a case tried before a justice without the intervention of a jury is somewhat difficult to perceive, since the same arguments could be more effectively made in contesting a finding of guilt on the merits.

sion may not be shifted to the defendant on any essential element of the crime. We applied this doctrine in respect to this same statutory offense in *State* v. *Kurowski*, 100 R.I. 25, 210 A.2d 873 (1965), years prior to *Winship* and *Mullaney*. We have recently reaffirmed that a legislatively authorized inference or presumption does not have the effect of shifting the burden of proof to a defendant in a criminal case, even though it may place upon him the burden of going forward with evidence in order to raise an issue of fact. *State* v. *Neary*, 122 R.I. 506, 511, 409 A.2d 551, 554-55 (1979).

Since the decisions of the Supreme Court in *Winship* and *Mullaney*, much scrutiny has been given to the general subject of the role of presumptions in determining guilt in criminal cases. *See Evans* v. *State*, 28 Md. App. 640, 349 A.2d 300 (Ct. Spec. App. 1975), *aff'd*, 278 Md. 197, 362 A.2d 629 (1976), for a searching analysis of this subject.

Both prior to and since *Winship*, the Supreme Court has attempted to clarify the effect of statutory and common-law presumptions in a number of cases decided over a period of several decades. Among these cases are *Turner* v. *United States*, 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970); *Leary* v. *United States*, 395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969); *United States* v. *Romano*, 382 U.S. 136, 86 S. Ct. 279, 15 L. Ed. 2d 210 (1965); *United States* v. *Gainey*, 380 U.S. 63, 85 S. Ct. 754, 13 L. Ed. 2d 658 (1965); and *Tot* v. *United States*, 319 U.S. 463, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943). In *Gainey*, the Court upheld on a "rational connection" test a statutory presumption that the defendant's unexplained presence at an illegal still would warrant a finding that he was operating the still. The next Term, in *Romano*, the Court declared invalid a statutory presumption which as construed by the trial judge apparently mandated[3] an inference that presence at the site of an illegal still would support a finding that the person present was in possession or

---

[3]The majority in *County Court of Ulster County* v. *Allen*, 442 U.S. 140, 157 n.16, 99 S. Ct. 2213, 2225 n.16, 60 L. Ed. 2d 777, 792 n.16 (1979), placed this construction upon the trial justice's charge to the jury in *Romano*.

control of the still. In *Leary* the Court struck down a statutory presumption which authorized jurors to infer from a defendant's possession of marijuana that the marijuana had been illegally imported and that the defendant had known of the illegal importation. This presumption, the Court held, was arbitrary because it could not be said that the presumed fact was "more likely than not to flow from the proved fact on which it is made to depend." *Leary* v. *United States*, 395 U.S. at 36, 89 S. Ct. at 1548, 23 L. Ed. 2d at 82. Finally, in *Turner*, the Court declared invalid a presumption that possession of cocaine would support a finding that the cocaine was illegally imported and that the defendant knew of its illegal importation. In the same case the Court upheld an identical presumption in respect to heroin. This latter legislatively authorized inference was held by the Court to satisfy even a reasonable-doubt standard.

Probably the seminal case in this area is *Tot* v. *United States, supra*. This case involved a prosecution under a section of the Federal Firearms Act that made it unlawful for any person who had been convicted of a crime of violence to receive a firearm that had been transported in interstate or foreign commerce. The act further provided that the possession by such a person of a firearm "shall be presumptive evidence that such firearm * * * was shipped or transported or received * * * in violation of this Act." Federal Firearms Act, ch. 850, §2 (f), 52 Stat. 1250 (1938) (repealed 1968). The Supreme Court held that the inference permitted by this statute was arbitrary and irrational and therefore unconstitutional. *Tot* established the so-called "rational connection" test which was followed in the later cases. This doctrine prevents a legislature from establishing a permissive inference when there is no rational connection between the proven fact and the fact to be inferred. That Congress could not constitutionally establish a mandatory inference bearing on an element in a criminal case the *Tot* Court assumed on the theory that "it is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime," *McFarland* v. *American*

*Sugar Refining Co.*, 241 U.S. 79, 86, 36 S. Ct. 498, 501, 60 L. Ed. 899, 904 (1916). *See* Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity*, 92 Harv. L. Rev. 1187, 1201-02 (1979). Rhode Island has recognized that a statutory presumption or legislatively authorized inference does not obviate the necessity of a determination by the trier of fact that the totality of evidence in the case, including such inferences, must constitute proof beyond a reasonable doubt. Thus, we regard statutory inferences or presumptions as being permissive rather than mandatory. The trier of fact, judge or jury, is free to accept or reject the inference in each case. *State* v. *Neary*, 122 R.I. at 513, 409 A.2d at 555; *State* v. *Kurowski*, 100 R.I. at 28, 210 A.2d at 875. *See County Court of Ulster County* v. *Allen*, 442 U.S. 140, 157-60, 99 S. Ct. 2213, 2224-26, 60 L. Ed. 2d 777, 792-94 (1979), for a comprehensive discussion of this concept.

Perhaps the case that most closely approximates the instant case is *Barnes* v. *United States*, 412 U.S. 837, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973). In that case Barnes was convicted in the United States District Court for possessing United States Treasury checks stolen from the mails, knowing them to be stolen. The trial judge instructed the jury as follows:

> " 'Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.' " *Id.* at 840 n.3, 93 S. Ct. at 2360 n.3, 37 L. Ed. 2d at 384 n.3.

Barnes had deposited four checks in an account which he had opened under the pseudonym "Clarence Smith." Each check bore the apparent endorsement of the payee and a second endorsement by "Clarence Smith." Barnes had later explained to a postal inspector that he had received the checks in question from people who had sold furniture for him from door to door and that the checks were signed in the payees' names when he received them. He denied making the payees' endorsements.

Mr. Justice Powell, writing for the majority, after tracing the development of the principles enunciated in *Turner, Leary, Romano,* and *Gainey,* suggested that

> "[t]he teaching of the foregoing cases is not altogether clear. To the extent that the 'rational connection,' 'more likely than not,' and 'reasonable doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance." *Barnes* v. *United States,* 412 U.S. at 843, 93 S. Ct. at 2361, 37 L. Ed. 2d at 386.

Turning to the constitutionality of the traditional common-law inference utilized by the trial judge in his charge, Mr. Justice Powell said that for centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. He stated that the unexplained possession of recently stolen Treasury checks payable to persons whom Barnes did not know created a strong inference, based on common sense and experience, that Barnes must have known or been aware of the high probability that the checks were stolen.

> "Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable-doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process." *Id.* at 845-46, 93 S. Ct. at 2363, 37 L. Ed. 2d at 387.

Vincent also cites in support of his contentions *County Court of Ulster County* v. *Allen, supra.* In that case the Court upheld a challenged New York statute which provided that, with some exceptions, the presence in an automobile of a firearm constitutes presumptive evidence of the possession of such firearm "by all persons occupying such automobile at the time such weapon * * * is found." The Court, in an opinion by Mr. Justice Stevens, overturned a judgment by the

Court of Appeals for the Second Circuit which in a habeas corpus proceeding had held that this statute was facially unconstitutional. Indeed, the Supreme Court held that the statute was neither facially unconstitutional nor invalid as applied to three adult males who had been convicted of possession of handguns which, together with ammunition, were located in an open handbag owned by a sixteen-year-old girl also present in the vehicle.[4]

An examination of the facts in *Barnes* and *Allen* impels us to the conclusion that the totality of circumstances in the case at bar are at least as persuasive in pointing toward guilt as were the facts in either of those cases, which facts were held sufficient by the Supreme Court of the United States to constitute the necessary quantum of proof.

In the instant case direct evidence was obtained from an active participant who stated that he had stolen the chain saw for the purpose of giving it to Vincent. Evidence was further presented in the testimony of W.H. that Vincent had previously said that he could sell a chain saw. W.H. then testified that he turned his keys over to Vincent, who later told him that he not only had taken the chain saw but that he had gotten rid of it. To parallel the observation of Mr. Justice Powell in *Barnes*, *supra*, we observe that on the basis of such evidence, common sense and experience tell us that Vincent must have known or been aware of the high probability that his fellow student had stolen the chain saw. Since under the square holding of *Barnes* such evidence would have been clearly sufficient to enable a trier of fact to find beyond a reasonable doubt that Vincent knew the chain saw was stolen, the trial justice was correct in denying Vincent's motion for judgment of acquittal.

For the foregoing reasons, the appeal is denied and dismissed and the case is remitted to the Family Court.

Mr. Justice Doris did not participate.

---

[4]The girl had also been convicted of possession of the guns, but her case was not before the Supreme Court.

*Dennis J. Roberts II*, Attorney General, *Joel S. Chase*, Special Assistant Attorney General, for plaintiff.

*Barbara Hurst*, Chief Appellate Attorney, *John A. MacFadyen III*, *Mary Levesque*, Assistant Public Defenders, for defendant.