STATE

v.

**Armando V. SABITONI.**

No. 79–338–C.A.

Supreme Court of Rhode Island.

Sept. 10, 1981.

Dennis J. Roberts, II, Atty. Gen., Alyssa L. Talanker, Sp. Asst. Atty. Gen., for plaintiff.

John Tramonti, Jr., Providence, Griffin & Higgins, Geline W. Williams, Kirk Y. Griffin, Boston, Mass., for defendant.

## OPINION

SHEA, Justice.

Armando V. Sabitoni was found guilty by a jury in the Superior Court of conspiracy to extort in violation of G.L. 1956 (1969 Reenactment) § 11–1–1, as amended by P.L. 1975, ch. 283, § 1. He was sentenced to three years probation. On appeal the defendant raises two issues. First, he argues that the trial justice erred by allowing five tape recordings of conversations between the supposed victim and the defendant to be entered into evidence. Second, he argues that it was error for the trial justice to deny his motion for judgment of acquittal. Since the resolution of the second issue will be dispositive of this appeal, our opinion will be limited to a discussion of that issue.

The evidence establishes that the events that gave rise to this prosecution unfolded over the course of several days in December of 1975. At that time, defendant was a representative of the Laborers' Union, Local 271, employed by the organization generally to facilitate relations between union members and the construction companies that utilized their services. His duties called for frequent visits to construction sites where Local 271 members were employed. The victim's own testimony established that he had known defendant for at

least fifteen years and considered him a personal friend.

During the same period in December 1975, Pacella Brothers, Inc. (Pacella Brothers), a Massachusetts corporation, was engaged in the installation of sewer lines in the town of West Warwick. A piece of equipment which was used by Pacella Brothers to drill through rock was a three-ton air compressor that had been purchased by the company in August of 1975 at a cost of $31,500. Sometime between the end of work on Friday, December 12, 1975, and the resumption of work on the following Monday, the compressor disappeared from the construction site where it had been left for the weekend.

Upon learning of the machine's disappearance, John Pacella (Pacella), one of the principals of Pacella Brothers, called the West Warwick police and reported the incident. On at least two occasions that morning, in the presence of several workers, Pacella offered a $3,000 reward for the compressor's return.

During the evening of Monday, December 15, 1975, Corporal Louis E. Dussault of the Rhode Island State Police located the missing compressor behind the union hall of the Teamsters Local 251 in the city of East Providence. Pacella was notified and went to the East Providence location and identified the machine.

That same evening, two members of defendant's union visited him at his home. They apparently had interpreted Pacella's reward offer that morning to be an accusation that certain employees either had knowledge of or were involved in the disappearance of the compressor. They wanted to inform defendant, as their representative, of the machine's disappearance and about what they believed to be an accusatory reward offer.

On the morning of Tuesday, December 16, defendant phoned Pacella at his field office in West Warwick. Pacella testified that defendant said that he had read of the theft in the Monday evening edition of the Providence *Evening Bulletin*. He offered to help Pacella find the compressor.

Pacella did not inform defendant that the machine had already been located the previous evening. Following this conversation, he phoned the State Police and informed them of defendant's call.

The defendant phoned Pacella again a short time later and, according to Pacella's testimony, said that he knew of someone who would assist in the recovery of the compressor. The two men agreed to meet at a donut shop opposite Midland Mall. Pacella then notified the State Police of this conversation. He arranged to meet with the police prior to his meeting with defendant. The police provided Pacella with a tape recorder to be worn under his clothing so that the conversation with defendant would be recorded.

Pacella arrived at the donut shop to find defendant and one Nathan Gergora (Gergora) waiting for him. Gergora was introduced as Nate George. Gergora, who would subsequently become a codefendant in this case, carried on the greater part of the conversation with Pacella. The tape recording and the transcript of this exchange were admitted at trial.

Most of the recorded conversation was a description of the compressor and of other equipment that had been stolen from Pacella Brothers prior to December of 1975. Three short passages dealt with the subject of payment of money for the return of the compressor. In the first exchange Gergora attempted to have Pacella state what the return of the machine would be worth. Pacella at first refused to state a figure but finally agreed to the amount of $3,000. Later in the conversation, as if he were unsure of Pacella's intentions, Gergora asked, "Will you give me a pay on this thing, John?" to which Pacella replied that he would "give [Gergora] a take." Finally, Pacella stated that he wanted to find out who was responsible for taking the compressor, and in response to Gergora's inquiries he repeated his willingness to pay for the information.

Later the same day, Gergora called Pacella at his West Warwick field office and told him that the compressor was located at a

construction site in East Providence. Gergora told Pacella to call the police and tell them that he had received this information in a tip and to let the police carry on with the investigation of the incident. By this time Pacella had attached a tape recorder to his telephone, and this conversation was also recorded.

The next morning, Wednesday, December 17, Gergora called Pacella again to inquire regarding Pacella's success in finding the machine. The tape recording of this conversation reveals that the only things discussed were the recovery of the compressor and the fact that Gergora had information about some other equipment that he believed might have belonged to Pacella. Gergora also told Pacella that they would not be in contact with each other after this but that Pacella should "take care of [defendant Sabitoni] for him."

The next afternoon defendant and Joseph Romano (Romano), who subsequently was charged in this case, paid a visit to Pacella's field office. The proceedings were again recorded with Pacella's knowledge and cooperation. The defendant came to pick up the money that Pacella had promised to Gergora. Pacella refused to deliver the money to defendant stating that he wanted to speak to Gergora in person to find out who was responsible for the disappearance of the machine. After a long discussion among defendant, John Pacella, and Mike Pacella (the other principal in Pacella Brothers), it was finally agreed that John Pacella would meet Gergora the next morning at the donut shop in order to pay him the money and to try to get him to reveal who was behind the theft. The defendant insisted during this conversation that he had no interest in the $3,000 and that the entire amount constituted a payment to Gergora for his services.

The next morning, Thursday, December 18, Pacella met Gergora at the donut shop again wearing a tape recorder. He demanded to know Gergora's sources. Gergora replied that they were terrible people and that Pacella should simply be happy to have retrieved his machine.

At this point Pacella asked Gergora if he should hand him the money right there. Pacella did so, and Gergora put it in his pocket. The two continued talking for some time about the compressor, about other stolen equipment, and about the possibility of Gergora's doing the electrical work for some of Pacella's contracts. When Gergora left, he entered his automobile and drove across the highway to the parking lot of Midland Mall where defendant and Romano were waiting, seated in defendant's car which was positioned so that its occupants would be able to observe the entrance to the donut shop. Gergora left his own vehicle and entered defendant's. Several minutes later undercover State Police officers who had been observing the donut shop from the mall parking lot approached defendant's vehicle and arrested its three occupants.

A review of the record, particularly the transcripts of the recorded conversations among defendant, Gergora, and Pacella, disclosed that there was never any obvious threat to or coercion of Pacella. This conclusion is supported by the testimony of Pacella himself, who said he was not threatened by Gergora.

When this matter originally came to trial, defendant, Gergora and Romano were joined as codefendants. The three were charged with larceny, conspiracy to commit larceny, extortion and conspiracy to extort. At the close of all of the evidence, each defendant moved for judgment of acquittal on all four counts.

The trial justice granted defendants' motions on the charge of larceny and conspiracy-to-commit-larceny counts. He ruled that there was no evidence to support these charges. The defendants' motions regarding the extortion charge were also granted. The trial justice found that there was no threat made during the course of the dealings with Pacella. The trial justice denied defendants' motion for judgment of acquittal on the charge of conspiracy to extort. The jury returned guilty verdicts against defendant and Gergora, but Romano was found not guilty.

██ We turn now to defendant's claim of error regarding the denial of his motion for judgment of acquittal. When responding to a motion for judgment of acquittal, a trial justice does not evaluate the credibility of witnesses or the weight of the evidence before the court. He or she considers only that evidence upon which the state relies to prove guilt beyond a reasonable doubt. He views this evidence in the light most favorable to the state, drawing from it every reasonable inference consistent with guilt. *In Re Vincent*, R.I., 413 A.2d 78, 79 (1980); *State v. Roddy*, R.I., 401 A.2d 23, 32 (1979). When, after such review, the evidence supporting the state's position is insufficient to establish guilt beyond a reasonable doubt, the court must grant the defendant's motion. *State v. Distante*, 118 R.I. 532, 536, 375 A.2d 212, 215 (1977); *State v. Rose*, 112 R.I. 402, 406, 311 A.2d 281, 283 (1973).

██ The crime of conspiracy is the combination of two or more persons to commit an unlawful act or to do a lawful act for an unlawful purpose. No action in furtherance of the conspiracy beyond the making of the unlawful agreement need occur for the crime to be committed. *State v. LaPlume*, 118 R.I. 670, 677, 375 A.2d 938, 941 (1977); *State v. Distante*, 118 R.I. at 537, 375 A.2d at 215. Regarding the crime of conspiracy to extort, this court has held that under G. L. 1956 (1969 Reenactment) § 11–42–2,[1] the crime of extortion consists of these two basic elements: a verbal threat to place a victim in peril of bodily harm or of harm to his property, accompanied by an intent to compel the victim to do an act against his will. *State v. Pope*, R.I., 414 A.2d 781, 788 (1980); *State v. Davis*, R.I., 384 A.2d 1061, 1064 (1978).

██ There is no evidence in this record, even when it is viewed in the light most favorable to the state, that defendant conspired to threaten Pacella's person or his property in order to ensure that they would be paid the $3,000. There is no evidence, either direct or inferential, in this record that any verbal threat or even threatening tones of voice or gestures were employed during the conversations between defendants and Pacella. In fact, Pacella himself testified at trial that during the conversations in which he agreed to pay $3,000 he was not threatened. Absent any evidence either direct or by reasonable inference that defendant conspired to threaten or coerce Pacella to do something against his will, this charge may not stand.

██ The state contends that the overall circumstance of the air compressor's disappearance created a scenario in which the conversations and the actions of the defendants indeed constituted a threat to the victim's person or property. Although a person might well speculate about the existence of such a nefarious plan or scheme, it was not permissible for the jury to do so. Proof based on speculation and conjecture will not support a conviction. *State v. Distante*, 118 R.I. at 538–39, 375 A.2d at 216.

We hold that it was error for the trial justice to deny the defendant's motion for judgment of acquittal on the conspiracy-to-extort count. Accordingly, the defendant's appeal is sustained, the conviction is vacated, and the case is remanded to the Superior Court with direction for entry of judgment of acquittal.

BEVILACQUA, C. J., did not participate.

---

1. General Laws 1956 (1969 Reenactment) § 11–42–2 was subsequently amended by P.L. 1980, ch. 95, § 1.