STATE

v.

Manuel PORTO.

No. 89–583–C.A.

Supreme Court of Rhode Island.

May 24, 1991.

James E. O'Neil, Atty. Gen., Annie Goldbert and Jeffrey Greer, Asst. Attys. Gen., and J. Scott Kilpatrick, Sp. Asst. Atty. Gen., for plaintiff.

John A. MacFayden, III, John F. Cicilline, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the defendant's appeal from a conviction of one count of conspiracy to violate the Rhode Island Racketeer Influenced and Corrupt Organizations statute (Rhode Island RICO statute) and three counts of receiving stolen goods. The defendant does not appeal his conviction for filing a false or an erroneous statement with the Bristol police. We reverse and remand for entry of judgment of acquittal on all four counts.

The matter before us arises out of a sophisticated, multi-state stolen-car ring whose operations ran the length of the east coast and up into Canada. The major participants in the enterprise were identified as Frank Canario, Sr. (Canario), Edmund LaRue (LaRue), and John Carraturo (Carraturo). The vehicles to be stolen were generally identified by one of two methods. According to one method, a participant would see a car he liked, take down the license-plate number, go to the Registry of Motor Vehicles to obtain the owner's name and address, and then steal the car when the time was right. Alternatively, a participant would peruse "The Bargain Swapper" —a free circular listing vehicles for private sale or trade, many with photographs—and telephone the owner to determine the vehicle's location and the times it would be displayed. The car would then be stolen at the time most advantageous to the participant.

The stolen cars would generally be brought to one of several garages or automobile repair shops for any required mechanical work, a new inspection sticker, and a new vehicle-identification number, all in an attempt to alter the vehicle's identity to facilitate its resale. Manuel Porto (Porto or defendant) owned one of the repair shops where stolen cars were brought for mechanical work and/or new inspection stickers. More detailed facts concerning defendant's involvement will be given when relevant.

On August 18, 1986, the Providence County Grand Jury returned a 125–count indictment, charging ten individuals with numerous crimes connected to the operation of the stolen-car ring. The foundation of the indictment was count 1 and count 2 that alleged, respectively, that the named individuals participated in and conspired to participate in the affairs of an enterprise through racketeering activity in violation of G.L.1956 (1985 Reenactment) § 7–15–2(c) (Rhode Island RICO statute) and G.L.1956 (1981 Reenactment) § 11–1–6 (conspiracy statute). The remaining 123 counts charged assorted additional acts of criminal activity including larceny, receiving stolen goods, obtaining money under false pretenses, arson, and filing false documents.

The Rhode Island indictment was lodged only after virtually identical federal charges had been brought in the Federal District Court of Vermont. These charges culminated in a plea of guilty by most of the indicted individuals approximately one week before the Rhode Island indictment was issued. Porto, however, refused to plead to the charges brought against him in Vermont, and the charges were eventually dismissed.

The defendant was charged in 7 counts of the 125–count Rhode Island indictment. In addition to the allegations in count 1 and count 2 that defendant violated the Rhode Island RICO statute and the conspiracy statute, he was charged with five related offenses: count 13 charged defendant with possession of a stolen vehicle in violation of G.L.1956 (1982 Reenactment) § 31–9–2, as amended by P.L.1983, ch. 221, § 7; counts 30, 41, and 46 charged defendant with receiving stolen goods in violation of G.L. 1956 (1981 Reenactment) § 11–41–2; and count 51 charged defendant with filing a false or an erroneous statement with the Bristol police in violation of G.L.1956 (1981 Reenactment) § 11–18–1.

The case was tried in June 1988 and went to the jury on counts 1, 2, 30, 41, 46, and 51. The trial court had earlier granted defendant's motion for judgment of acquittal on count 13, charging him with possession of a stolen vehicle. The defendant was acquitted on count 1, charging him with a violation of the Rhode Island RICO

statute. He was found guilty on count 2, charging defendant with conspiracy to violate the Rhode Island RICO statute. The defendant was also found guilty on counts 30, 41, and 46, each charging defendant with receiving stolen goods. Finally, defendant was found guilty on count 51, charging him with filing a false or an erroneous statement with the Bristol police.

The defendant raises three issues on appeal. He argues that the trial court erred in denying defendant's motion for a new trial. The defendant also contends that the trial court erred in denying his motion for judgment of acquittal on counts 30, 41, and 46, each charging defendant with receiving stolen goods. Finally, defendant argues that the trial court erred in denying his motion for judgment of acquittal on count 2, charging defendant with conspiracy to violate the Rhode Island RICO statute. We believe that defendant was correct in arguing that the trial court erred in denying both of his motions for judgment of acquittal. Therefore, we need not address defendant's argument that the trial court erred in denying his motion for a new trial.

We first address defendant's contention that the trial court erred in denying his motion for judgment of acquittal on counts 30, 41, and 46, each charging defendant with receiving stolen goods, to wit, three Mercedes Benz automobiles, in violation of § 11–41–2. The defendant argues that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt. Specifically he argues that the state failed to meet its burden to prove each of the elements required for a conviction for receiving stolen goods under § 11–41–2. Section 11–41–2 provides:

"Receiving stolen goods.—Every person who shall fraudulently receive any stolen money, goods, securities, chattels or other property, knowing the same to be stolen shall be deemed guilty of larceny, although the person who stole the same may not have been prosecuted or convicted therefor; and the possession of any such stolen property shall be evidence of guilty knowledge by the person having such possession that such property was stolen, except such person shows

that it was acquired in the due course of trade and for adequate consideration."

We have previously held that, under this statute, the state must prove possession of the stolen goods coupled with guilty knowledge. *State v. Sciarra*, 575 A.2d 180, 181 (R.I.1990). Possession has been defined in this context as "an intentional control of an object with knowledge of its nature," *id.* (quoting *State v. Colbert*, 549 A.2d 1021, 1023 (R.I.1988)), and we have adhered to the well-settled rule that the term "possession" must be given a strict construction when used in a criminal statute. *State v. Gilman*, 110 R.I. 207, 216, 291 A.2d 425, 431 (1972).

The defendant argues that the state failed to prove beyond a reasonable doubt that he had possession of the stolen vehicles. The defendant contends that, even if one were to assume he knew the vehicles were stolen, the state failed to prove he had the intentional control that gave him the possession over the stolen vehicles that is required for a conviction for receiving stolen goods under § 11–41–2.

Although the trial court denied defendant's motion for judgment of acquittal, the trial justice was clearly troubled about whether the evidence presented by the state was sufficient to prove that defendant had "received" the stolen goods for the purposes of § 11–41–2. He stated:

"What did trouble the Court during the course of the trial, and in reviewing the arguments on the motion for judgment of acquittal, is whether the State proved beyond a reasonable doubt that this defendant did quote 'receive' the property which he knew was stolen. And I must say Rhode Island case law does not give much help in this regard. To receive has been defined by Webster to mean 'to acquire possession of.' Possession as the Court advised the jury and in responding to the defendant's motion requires proof that a person had knowledge of the nature of the substance with the intent to control. *In other words, that he had the intention to permanently deprive the true owners of the*

*possession of their respective vehicles.* And as I indicated earlier,—and I am still somewhat troubled by the proof as it relates to his intent to permanently deprive the true owners of their vehicles." [1] (Emphasis added.)

■ In reviewing the denial of a motion for judgment of acquittal, we, like the trial justice, must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses. *State v. Brown*, 586 A.2d 1085, 1088 (R.I.1991).

Our review of the record reveals that little evidence was introduced concerning the actual control defendant exercised over the stolen vehicles. Testimony was given that stolen vehicles were brought to defendant's repair shop for mechanical work: one for a routine tuneup, one to rebuild the engine, and one for repairs on the vehicle's driveshaft. Testimony was also given that defendant was present in his repair shop, although not as a participant, when a vehicle-identification number was altered on one of the stolen vehicles. Finally evidence was presented that defendant inspected four stolen Mercedes Benz automobiles.

■ We believe that this evidence, even when viewed in the light most favorable to the state, is insufficient to prove beyond a reasonable doubt that Porto exercised the intentional control sufficient to find that he gained the possession of the stolen vehicles that is required for a conviction for receiving stolen goods under § 11–41–2. The record is devoid of any evidence suggesting how long defendant is alleged to have had control over the stolen vehicles. Thus, although there was testimony that two stolen vehicles were left for an extended period at another repair shop, similar evidence was not presented concerning defendant. In fact the record is barren of any testimony that suggests the stolen vehicles were left with defendant for any period beyond that required to repair the vehicles. Additionally the state's reliance on the fact that defendant inspected four stolen Mercedes Benz automobiles to support the assertion that defendant possessed the stolen vehicles has no support in the record. There is no testimony that anyone actually witnessed defendant perform even a cursory inspection of the stolen vehicles, let alone the thorough inspection required by the Department of Transportation.[2] Finally defendant's own statement suggests that he desired as little control as possible over the stolen vehicles. Carraturo testified that he heard defendant tell Canario that "he wanted the cars out of [the repair shop] once they were done."

At the most, this evidence demonstrates that defendant's actions assisted in covering up the true identity of the stolen vehicles to aid in their resale. However, "the casual facilitator of a sale who exercises no dominion or control over the contraband cannot be said to have received or possessed it." *State v. Carter*, 138 Vt. 264, 270, 415 A.2d 185, 188 (1980) (citing *United States v. Jones*, 308 F.2d 26, 30 (2d Cir. 1962)). Relying upon the lack of evidence in the record demonstrating that defendant exercised the intentional control necessary for him to have gained possession of the stolen vehicles, we believe that defendant did not receive stolen goods under § 11–41–2 and that, therefore, the trial justice should have granted defendant's motion for judgment of acquittal on counts 30, 41, and 46.

We next address defendant's contention that the trial court erred in denying his motion for judgment of acquittal on count 2, which charged defendant with conspir-

---

**1.** This court has never decided that a conviction for receiving stolen goods under G.L.1956 (1981 Reenactment) § 11–41–2 requires that a defendant have the intention to deprive the true owners of possession of the stolen goods permanently. Apparently the prosecutor, defense counsel, and the trial justice were operating under this assumption. However, since we find that defendant did not have the possession of the stolen vehicles required for a conviction for receiv-

ing stolen goods under § 11–41–2, we need not address whether the prosecutor, defense counsel, and the trial justice were operating under a correct assumption.

**2.** LaRue testified that some of the stolen vehicles were inspected at defendant's repair shop. However, LaRue did not testify that he actually witnessed defendant perform these inspections.

acy to violate the Rhode Island RICO statute in violation of § 11–1–6.

██ "The crime of conspiracy is the combination of two or more persons to commit an unlawful act or to do a lawful act for an unlawful purpose." *State v. Sabitoni*, 434 A.2d 1339, 1342 (R.I.1981). Once the agreement is made, the offense is complete, *State v. Barton*, 427 A.2d 1311, 1312–13 (R.I.1981), and therefore, no overt act by a defendant in furtherance of the conspiracy beyond the making of the agreement need occur for the crime to be committed. *State v. Brown*, 486 A.2d 595, 601 (R.I.1985); *Sabitoni*, 434 A.2d at 1342.

This court has never addressed the specific requirements for a conviction for conspiracy to violate the Rhode Island RICO statute. Thus, we look for guidance to federal decisions that have passed upon the requirements for a conviction for conspiracy to violate the federal RICO statute.[3] The circuit courts are clearly not in agreement on this issue. *See United States v. Neapolitan*, 791 F.2d 489, 494 (7th Cir. 1986). The First and Second Circuits have taken the position that a conspiracy to violate the federal RICO statute requires an agreement to become a member of the enterprise and an agreement to *personally* violate the federal RICO statute. *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). In contrast, at least five other circuit courts, including the Seventh Circuit in *Neapolitan*, have taken the position that a conspiracy to violate the federal RICO statute requires an agreement to become a member of the enterprise and an agreement only that *members of the enterprise* will violate the federal RICO statute. *Neapolitan*, 791 F.2d at 494, 498; *United States v. Joseph*, 781 F.2d 549, 554 (6th Cir.1986); *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert.*

*denied*, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985); *United States v. Tille*, 729 F.2d 615, 619 (9th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984); *United States v. Carter*, 721 F.2d 1514, 1529 (11th Cir.), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984).

██ In reviewing these conflicting interpretations for guidance in regard to the requirements for conspiracy to violate the Rhode Island RICO statute, we must recognize the rule of construction set forth in G.L.1956 (1985 Reenactment) § 7–15–10, which states that "[t]he provisions of this chapter shall be liberally construed to effectuate its purposes." After consideration, we adopt the position that for a conviction for conspiracy to violate the Rhode Island RICO statute, a defendant must agree to become a member of the enterprise and only agree that members of the enterprise violate the Rhode Island RICO statute. We feel that the adoption of this position comports with the rule of liberal construction in § 7–15–10 and the common-law concept that mere agreement to the commission of the *enterprise's* unlawful objectives constitutes the crime. Thus, we feel this offense can be analyzed as consisting of two agreements (in reality they would be encompassed by the same manifestations of the defendant): an agreement to conduct or to participate in the affairs of an enterprise and an agreement that the enterprise violate the Rhode Island RICO statute. *See Neapolitan*, 791 F.2d at 499.

██ In applying this framework to the matter before us, we must first determine whether defendant agreed to participate in the affairs of the enterprise with the other conspirators in the stolen-car ring. We acknowledge that direct evidence of this agreement is unnecessary. The state's proof of an agreement to participate in the affairs of the enterprise may rest upon inferences drawn from relevant and competent circumstantial evidence. *See United*

---

3. We are mindful that the Rhode Island RICO statute and the federal RICO statute are substantively different. *See State v. Brown*, 486 A.2d 595, 599 (R.I.1985). Nevertheless, we believe federal decisions offer sound conceptual guidance in the area of conspiracy to violate the Rhode Island RICO statute.

*States v. Elliott,* 571 F.2d 880, 903 (5th Cir.1978). In the matter before us the state relied first upon the fact that defendant inspected four stolen Mercedes Benz automobiles, writing information on the inspection stickers that defendant knew to be fictitious,[4] and second on the fact that defendant concededly gave a false statement to the police to inferentially establish that defendant had agreed to be a member of the enterprise.

■ We do not agree that the conclusion drawn by the state follows from the evidence. We believe that this evidence, even when viewed in the light most favorable to the state, does not sustain the finding beyond a reasonable doubt that defendant agreed to be a member of the enterprise. Thus, we believe the trial court erred in denying defendant's motion for judgment of acquittal on count 2. At the most, defendant's activities demonstrate an awareness that the four vehicles he inspected were stolen. Even assuming for the purposes of argument that defendant knew the vehicles to have been stolen, and we believe this inference is supported by the evidence, we do not think that the evidence presented is sufficient for us to infer that defendant had knowledge that the conspirators were operating a stolen-car ring. Moreover, defendant's awareness that the vehicles were stolen does not alter the reality that the services he performed on these vehicles were legal—routine repairs and inspections. Furthermore, we do not think that defendant's awareness that the vehicles were stolen can be transformed into an agreement on his part to become a member of the enterprise operating the stolen-car ring. *See United States v. Falcone,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed.

128 (1940). We agree with the United States Supreme Court that

> "one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally." *Direct Sales Co. v. United States,* 319 U.S. 703, 709, 63 S.Ct. 1265, 1268, 87 L.Ed. 1674, 1680 (1943) (paraphrasing the holding of *Falcone*).

This holding is entirely consistent with the principle that "[w]e, like the federal courts, tend to look with disfavor on attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecution." *State v. Patriarca,* 112 R.I. 14, 40, 308 A.2d 300, 316 (1973).

Our conclusion that the evidence did not prove that the defendant agreed to become a member of the enterprise operating the stolen-car ring makes it unnecessary for us to consider whether the defendant agreed that the enterprise violate the Rhode Island RICO statute. *See Neapolitan,* 791 F.2d at 499.

For these reasons the defendant's appeal is sustained, the judgment of conviction is reversed, and the papers of the case are remanded to the Superior Court with directions that a judgment of acquittal be entered on counts 2, 30, 41, and 46.

---

**4.** The four inspection stickers were affixed to vehicles registered to Gerard J. Palmer, Gerard E. Polmer, Gerid E. Polmer, and Gerad Polmer.