DECISION
This matter comes before the Court for decision on the motion of the third-party defendants, Richard Zompa and Cheryl DeMelo, (Zompa and DeMelo) to dismiss a complaint against them brought by the defendants and counterclaim plaintiffs, Peter Zanni (Zanni), Roma Construction Co., Inc. (Roma) and Ace Development Corporation (Ace). They argue that the counterclaim (1) violatesR.C.P. Rule 8 (a) (1) in that it fails to contain "a short and plain statement of the claim showing that the pleader is entitled to relief; (2) is contrary to Rule 9 (b) because it fails to allege the fraud complained of with requisite particularity; (3) is contrary to the provisions of Rule 14 (a), as a third-party complaint, because the alleged liability of Zompa and DeMelo to the counterclaim plaintiffs is not a liability for all or part of the original plaintiffs' claims against the defendant; (4) fails to state a claim upon which relief may be granted pursuant toRule 12 (b) (6); (5) fails to allege claims under Federal and State RICO Acts (18 U.S.C. § 1961, et seq. andR.I.G.L. § 7-1 5-1, et seq.); and (6) is subject to dismissal as illegal or collaterally estopped.
I.
Most of the pleading which contains the purported third-party complaint against Zompa and DeMelo defendants is actually a counterclaim against the plaintiff Armand Cortellesso (Cortellesso), nicknamed "Smokey," to which Zompa and DeMelo are joined. The complaint against Zompa and DeMelo arises out of their alleged participation with Cortellesso in what are alleged to be violations of the two RICO Acts, and also charges them with civil liability under G.L. § 9-1-2 for certain violations of the criminal law of this State. Zompa and DeMelo accordingly are actually defendants joined in a counterclaim against the plaintiff (s) in this action. For this reason the Court does not address the arguments regarding Rule 14 (a).
II.
The Allegations of Fact
It is therefore necessary to examine the facts alleged against Cortellesso before the facts alleged against Zompa and DeMelo can be tested for their procedural sufficiency under the several Rules cited by the counterclaim defendants.
The allegations of operative facts to establish liability begin with paragraph 50 at page 15 of a 62 page pleading with 244 numbered paragraphs. In May 1993 Cortellesso represented to Zanni and Roma that he had the financial resources to construct homes on 24 lots in a development called Oak Hill Estates in the Town of Johnston. Relying on that representation Zanni and Roma agreed to sell 24 lots to Cortellesso on condition that they could obtain at least 10 sewer connection permits prior to a certain date. Because of the unlawful action of certain municipal officials alleged to be associated with Cortellesso, Zanni and Roma did not obtain the permits.
Thereafter, Cortellesso again falsely represented that he had the financial and other resources to complete the entire Oak Hill Estates development exactly as required by site plans and permits and that he desired and intended to so complete the development. Relying on those false representations, as well as Cortellesso's agreement to assume financial responsibility for the construction of a water pumping station, to pay certain obligations and liabilities incurred by Zanni and Roma, to complete the development of Oak Hill Estates exactly as specified in certain site plans recorded in the Town's land evidence records, and to guarantee certain loans and agreements from Value Development, Inc., which Cortellesso represented to be a successful building concern, Zanni, Roma and Ace agreed in November 1993 to transfer all their interest in Oak Hill Estates to Cortellesso. In fact, they allege, Cortellesso did not have the resources to complete the project exactly as specified and never intended to perform his obligations under the agreements, but in fact intended to use his agreements with Zanni and Roma to further racketeering activities and to obtain proceeds for investment in other enterprises. The counterclaim plaintiffs allege generally that they relied on Cortellesso's representations, and that those representations were false and fraudulent and intended to deceive them.
In an effort to further particularize Cortellesso's fraudulent schemes the counterclaim plaintiffs allege that Zanni was induced as part of the November 1993 transaction by Cortellesso's false representations of his resources and intentions to loan Cortellesso $100,000 for deposit into a pumping station escrow account, which Cortellesso has refused to repay when sued by Zanni and Roma by fraudulently asserting payments and set-offs. They also allege that Cortellesso represented that he would make a down payment, perform other conditions of a contract and pay a mortgage loan to induce Ace to pass title to five lots in Oak Hill Estates, in reliance on Cortellesso's representations, but Cortellesso did not make the down payment and defaulted on his mortgage obligation to Ace. Also, they claim that, as part of his scheme to defraud them, Cortellesso falsely represented in 1994 and 1995 that he had paid certain debts as agreed, including an obligation of approximately $26,000 to Seigmund Associates. He is also alleged to have falsely represented in 1994 and 1995 to certain State and local governmental agencies that he had not purchased all of Zanni's and Roma's interests in Oak Hill Estates and that he did not own the development, but that Zanni and Roma, and not he, were responsible to complete infrastructure work and for regulatory compliance.
In 1993 and 1994, according to the pleading, Cortellesso falsely represented to homeowners in the development that he controlled the issuance of water connection permits in Oak Hill Estates and was authorized to charge a fee for connecting to the municipal water supply. In a 1995 petition to the Town Council of the Town of Johnston, Cortellesso is said to have falsely represented that one Frank Simonelli had paid him a fee of $2,038 per lot, that he had expended $364,000 on the construction of the pumping station, and that he had discharged all his obligations concerning construction of the pumping station. The counterclaim plaintiffs also allege that between 1993 and 1995 Cortellesso falsely represented to Zanni, Roma, Ace and others that he had complied with the 1993 agreements in order to obtain credit. Finally, they allege that Cortellesso concealed from them the fact that he had bribed an official of the Town of Johnston and had extorted money from homeowners in Oak Hill Estates.
Briefly Summarized, the counterclaim plaintiffs allege that Cortellesso, assisted by his lawyer, Louis Jackvony, and other undisclosed agents, schemed to defraud Zanni, Roma and Ace by inducing them to sell him their lots in the development by false representations of his financial resources and his intentions to carry out his obligations under his agreements with them. He thus induced them not to seek relief against him for his failure to comply with his obligations under these agreements by concealing his extortions and bribery, and his failure to carry out his obligations after the agreements had been consummated but not fully completed.
The pleaders do not, however, allege how Zompa and DeMelo participated in Cortellesso's scheme to defraud Zanni, Roma and Ace, nor, for that matter, even that these two knew about it. Nor do they allege how these defendants participated in the bribery or extortion, nor that they knew anything about this alleged criminal misconduct on Cortellesso's part. Quite reasonably, in Count VII of their pleading the counterclaim plaintiffs seek no relief from Zompa or DeMelo directly for common law fraud.
III.
Civil Liability for Crimes
(G.L. §§ 9-1-2 and 11-7-6)
The bribery of Anthony Izzo by Cortellesso is alleged as one of the racketeering activities of Cortellesso as a "predicate" to RICO liability. Cortellesso is alleged, as part of predicate acts 12 and 13, as described in paragraphs 101 thru 109, inclusive, of the counterclaim, to have given consideration unlawfully to Izzo to gain his assistance in extorting money from a homeowner in the development in furtherance of Cortellesso's scheme to defraud Zanni, Roma and Ace. Predicate acts 13 and 14, as described in paragraphs 111 thru 119, inclusive, of their complaint refer to the same bribery with respect to another homeowner. In the allegation of these predicate acts no direct reference whatever is made to Zompa and DeMelo.
In paragraphs 196 and 242 of the third-party complaint Zanni, Roma and Ace do allege in conclusory terms that Zompa and DeMelo conspired with and aided and abetted Cortellesso, and others, named and unnamed, to engage in the various criminal activities alleged in the complaint, presumably including the bribery of Anthony Izzo. Count VIII is a bare accusation that DeMelo and Zompa, along with Cortellesso and his wife, are liable under G.L. §§ 9-1-2 and 11-7-6 for their criminal acts including the bribery of Anthony Izzo.
Taking the complaint as a whole, the wrong allegedly done to Roma, Zanni and Ace was the loss of their money and land as a consequence of Cortellesso's scheme to defraud them. The counterclaim plaintiffs argue that Zompa and DeMelo's participation in the conspiracy to defraud them renders them civilly liable for any act undertaken by any other conspirator in furtherance of the conspiracy. See State v. Barton,424 A.2d 1033, 1038 (R.I. 1981).
The alleged bribery of Izzo and the attempted extortion of the homeowner are alleged to have furthered that scheme to defraud. How that criminal misconduct could have furthered that fraud is obscure, to say the least. The pleading sheds no illumination by which to discern any nexus whatever. Although it is not clear in the pleadings, it does appear from paragraphs 106 (b) and (c) and 116 (b) and (c) of the counterclaim that Cortellesso is alleged to have bribed Izzo and attempted to extort money from homeowners in December 1993 and January 1994, which would be after Zanni, Roma and Ace had already entered into their agreements to sell their interests and lots in Oak Hill Estates to Cortellesso. What part Zompa and DeMelo had in the alleged bribery and extortion is also not in any way, let alone briefly as required by Rule 8 (a) (1). stated in the counterclaim. Neither does the counterclaim allege, as it cannot, that Zanni, Roma and Ace were injured directly by the bribery and extortion.
Whether the bare-bones allegations of paragraphs 196 and 242 thru 244, inclusive, can survive a motion to dismiss Count VIII of the third-party complaint pursuant to Rule 12 (b) (6) and the other Rules cited by Zompa and DeMelo depends on a consideration of the factual allegations offered in support of their liability under the respective Federal and State RICO Acts. See Young v.Aylesworth, 35 R.I. 259, 265 (1913) (The gist of an action for conspiracy is damages.)
IV.
The RICO Acts Violations
(18 U.S.C. § 1961, et seq. and G.L. § 7-15-1, et seq.)
The State and Federal RICO Acts are substantially parallel. Both acts provide that, "Any person injured in his or her business or property by reason of a violation of (Federal: "Section 1962 of this chapter;" State: "this chapter") . . . shall recover (Federal: "threefold the damages he sustains;" State: "treble damages") and the costs of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964 (c) and G.L.§ 7-15-4 (c). Both acts forbid two pertinent kinds of conduct. 18 U.S.C. § 1962 (a) and G.L. § 7-15-2 (a)
both provide that it is "unlawful for any person who has (State: "knowingly") received any income derived, directly or indirectly from a (Federal: "pattern of") racketeering activity . . . to use or invest, directly or indirectly, any part of that income, or the proceeds of that income in the acquisition of an interest in, or the establishment or operation of any enterprise (Federal: "which is engaged in, or the activities of which affect, interstate or foreign commerce"). 18 U.S.C. § 1962 (c) andG.L. § 7-15-2 (c) both provide that it is "unlawful for any person employed by or associated with any enterprise (Federal: "engaged in, or the activities of which affect, interstate or foreign commerce") to conduct or participate (Federal: "directly or indirectly") in the conduct of the affairs of (State: "the enterprise;" Federal: "such enterprise's affairs") through (Federal: "a pattern of") racketeering activity . . ." Under the Federal RICO Act, of course, commerce clause jurisdiction must be alleged and proved. No such jurisdictional basis need underlie an action under the State RICO Act. In addition, the State RICO Act eliminates the vexatious requirement that a pattern of racketeering activity be alleged and proved in the two pertinent substantive RICO Act violations. It is particularly noteworthy that both 18 U.S.C. § 1964 (c) and G.L. § 7-15-4 (c)
require that civil liability arises for injuries sustained "by reason of" violations of express sections of the respective statutes.
Liability for conspiracy to violate the substantive provisions of the respective RICO Acts is said to be derived from separate statutory provisions. 18 U.S.C. § 1964 (c)
attaches civil liability to any violation of § 1962.Section 1962 (d) provides that it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." The circle of conspiracy liability is closed within the Federal RICO Act, itself
The State RICO Act contains no specific conspiracy provision in parallel with 18 U.S.C. § 1962 (d). The counterclaim plaintiffs argue, however, that G.L. § 11-1-6 provides that conspiracy to commit a crime is itself a crime. Accordingly, they argue, a conspiracy to violate G.L. § 7-15-2 (a) or (c) is a violation of "this chapter" as provided in § 7-15-4.
Alternatively, they argue that a conspiracy to violate one of the substantive provisions of the State RICO Act is a predicate to liability under G.L. § 9-1-2, and is swept up in Count VIII of their counterclaim, if not in Count VI, captioned Rhode Island RICO conspiracy. It is likewise noteworthy that G.L. §9-1-2 attaches liability to injuries suffered "by reason of" the commission of any crime or offense. Also noteworthy is the omission of any State RICO claim against DeMelo and Zompa in Count V, captioned "Rhode Island RICO," of the counterclaim.
In order to discover any meaningful allegation of the basis for any liability by Zompa and DeMelo to Zanni, Roma or Ace it is necessary to consider the allegations in paragraphs 128 thru 132 in a section of the counterclaim entitled "RICO predicate 16;" paragraphs 134 thru 138, entitled "RICO predicate 17," and paragraphs 140 thru 144, entitled "RICO predicate 18." The counterclaim plaintiffs allege that Zompa and DeMelo have violated 18 U.S.C. § 1962 (a) (Count I), § 1962 (d) by conspiracy to violate § 1962 (a) (Count II), § 1962 (c)
(Count III); and § 1962 (d) by conspiracy to violate §1962 (c) (Count IV). In order to allege violations of the sections, it is necessary to allege the existence of one or more enterprises and a pattern or patterns of racketeering activity.
Section 1961 (4) includes "any . . . group of individuals associated in fact although not a legal entity" in the definition of "enterprise." The counterclaim plaintiffs allege the existence of two associations-in-fact as "enterprises," within the meaning of the Federal RICO Act. They call one "The Smokey Enterprise." Zompa and DeMelo are alleged to be associated with the enterprise "in the sale and marketing of real estate and in the manufacture of fraudulent documents for use in schemes to obtain credit fraudulently." Paragraph 76. The roles of Zompa and DeMelo in The Smokey Enterprise is amplified somewhat in paragraph 71, where it is alleged they "marketed homes and property obtained by Cortellesso, created false and fraudulent documents, and aided and abetted Cortellesso and others in bank and other fraud."
The other association-in-fact is called "The Re/Max Enterprise." The counterclaim plaintiffs allege that the enterprise's "subsidiary business was to assist Cortellesso in the preparation of fraudulent documents and the presentation of such information to financial institutions, and to assist Cortellesso in the fraudulent sale of substandard or code-violating properties to customers." Paragraph 77. Zompa and DeMelo are alleged to be principally responsible for the enterprise's activities related to Cortellesso. Paragraph 78.
It is noteworthy at this time to observe that the enterprise referred to in 18 U.S.C. § 1962 (a) can be regarded as a target for the investment of proceeds of racketeering activity, as defined, and as an instrumentality for engaging in racketeering activity in § 1962 (c). The underlying objective of subsection (a) is to prevent the use of racketeering loot to infiltrate or take over legitimate businesses, but, of course, the language is broad enough to reach other activity.
"Racketeering activity" is defined in 18 U.S.C. § 1961(1) as meaning a veritable shopping list of criminal conduct. Pertinent to the allegations in the complaint are alleged violations of 18 U.S.C. § 1341 (mail fraud) (RICO predicates 1-5, 6-10, 11, and 37); 18 U.S.C. § 1343 (wire fraud) (RICO predicates 6-10); G.L. §§ 11-7-3 and 11-7-4
(included in 18 U.S.C. § 1961 (1) (A) (RICO predicates 12-13, 13-14); 18 U.S.C. § 1344 (financial institution fraud) (RICO predicates 15, 16, 17 and 18); 18 U.S.C § 152
(offense involving fraud connected with a case under Federal criminal law) and 18 U.S.C. § 1503 (obstruction of justice) (RICO predicates 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28-36); and 18 U.S.C. § 1951 (extortion) (RICO predicate 38). Federal RICO liability depends on a showing of a "pattern" of racketeering activity, which requires at least two acts of racketeering not more than ten years apart at a minimum.18 U.S.C. § 1961 (5). Also required is a showing that the acts demonstrate connectedness and continuity. H.J. Inc. v.Northwestern Bell Telephone Co., 492 U.S. 229, 238-39, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195, 207 (1989).
V.
The Counts of the Counterclaim Count I. The counterclaim plaintiffs allege in Count I that Zompa and DeMelo have received income from a pattern of racketeering activity and used that income or proceeds in the establishment or operation of one or more of the enterprises in violation of 18 U.S.C. § 1962 (a). as a result of which the third-party plaintiffs were "competitively or otherwise" injured in their business and property. Alternatively, they allege that Zompa and DeMelo "aided, abetted, counseled, commanded, induced and/or procured a course of conduct causing or contributing to the losses alleged herein, including but not limited to the acts alleged in (other parts of the complaint), amounting to or posing the threat or continuing criminal activity." It is clear however that any injury to these plaintiffs was caused only by the alleged racketeering activity of Cortellesso, either jointly with Zompa and Demelo, as alleged in RICO predicates 15, 16, 17 and 18, involving allegations of defrauding financial institutions, or as aided and abetted by Zompa and DeMelo, as alleged generally in the complaint.
This Court is aware of a division in the Courts of the United States regarding the "investment use" rule as applied to complaints of violations of 18 U.S.C. § 1962 (a). That rule limits such claims for relief to injuries caused by the investment or use of racketeering income. Cf. Rose v. Bartle,871 F.2d 331, 357-58 (3d Cir. 1989) with Busby v. Crown Supply,Inc., 896 F.2d 833, 837-39 (4th Cir. 1990). This Court accepts and follows the decision of the Busby Court. The Court is persuaded primarily by the Circuit Court's analysis of Sedima,S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and American Nat'l Bank Trust Company v. HarocoInc., 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam):
 "Rather than construing § 1962 (a) as imposing a direct injury requirement in § 1964 (c) actions, we believe that Sedima
instructs us to employ a traditional causation analysis in determining whether a RICO plaintiff has been injured `by reason of a section 1962 violation." 896 F.2d, at 839.
This Court agrees. The "investment use" rule is a gloss on the RICO Act, designed to ease the judicial burden of analyzing unfamiliar claims by eliminating them. The remedy for any "opacity" in the "broadly-drafted" RICO Act is obviously for the Congress, whence the statute was launched not the Courts whither it lands.
It is clear by now that "by reason of" in 18 U.S.C. § 1964(c) means "proximately caused by." See, for example,Chisholm v. Transouth Financial Corp., 95 F.3d 331, 336-37 (4th Cir. 1996). Proximate causation is familiar, if not completely understood, jurisprudential terrain for tort lawyers and courts. The United States Supreme Court quoted a by-now venerated tort lawyer's manual, Prosser and Keeton on Law of Torts, (once almost universally recognized simply as"Prosser")in Holmes v.SIPC, 503 U.S. 258, 268-69, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532, 544 (1992):
 "Here we use "proximate cause" to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects "ideas of what justice demands, or of what is administratively possible and convenient." W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on Law of Torts § 41, p 264 (5th ed 1984). Accordingly, among the many shapes this concept took at common law, see Associated General Contractors, supra, at 532-533, 74 L Ed 2d 723, 103 S Ct 897, was a demand for some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover. See, e.g., 1 J. Sutherland, Law of Damages 55-56 (1882).
Although the Court was divided on other questions, it was unanimous in approving the application of proximate causation to RICO civil liability. For the same reasons this Court reads "by reason of" in G.L. § 7-15-4 (c) and § 9-1-2 to mean "proximately caused by."
Accordingly it becomes necessary to examine the "injurious conduct alleged" of Zompa and DeMelo to see whether or not there is "some direct relation" between that conduct and "the injury asserted." Or, does the harm to the counterclaim plaintiffs flow "merely from the misfortune visited upon a third person?" For this inquiry we also turn to the specific allegations regarding Zompa and DeMelo in the parts of the complaint alleging RICO predicates 16, 17, and 18. Can the conduct of Zompa and DeMelo described in those allegations be proved to be the proximate cause of injury to Zanni, Roma and Ace? See Chisholm v.Transouth, supra; see also Rehkop v. Berwick Health CareCorp., 95 F.3d 285, 289 (3rd Cir. 1996).
In the Fall of 1994 Zompa and DeMelo are alleged to have entered into a conspiracy with Cortellesso and others to defraud a federally-insured state-chartered financial institution by presenting to the institution false and fraudulent documents in support of applications for credit by Cortellesso. The false and fraudulent documents supported a false representation by Cortellesso to the institution that he had valid sales agreements for some of the lots in the development for various sums. The other conspirator in each predicate, besides Cortellesso and Zompa and DeMelo, was the purported purchaser of the lot in each instance.
To further this conspiracy Zompa or DeMelo, or both of them, are said to have prepared a false and fraudulent purchase and sales agreement, which purported to show that each purchaser had agreed to buy the lot mentioned from Cortellesso and had made a down payment. Zompa and DeMelo allegedly knew that the agreements were false and fraudulent. It is inferable and presumably provable by evidence in proof of this count that Zompa and DeMelo knew that Cortellesso intended to use the documents they prepared to defraud the bank. It is not alleged that, in fact, the financial institution was defrauded in this count. Apparently all that happened was that Cortellesso attempted to defraud the bank. Evidence of the consummation of a conspiratorial agreement is admissible to prove the unlawful objective of the conspiracy. Nevertheless, a failure to allege an actual fraud in this count is suspicious. Furthermore, it is difficult to see how an unconsummated conspiracy to defraud can injure anyone, especially such persons as Zanni, Roma and Ace, who are not alleged to be the objects of the attempted bank fraud.
Any such injury to Zanni, Roma and Ace, even if Cortellesso, and the joint counterclaim defendants, had been successful in defrauding the financial institution, would have been indirectly and remotely connected to that fraud if at all. Conceivably, Cortellesso's fraudulently obtained loans might have been used somehow by Cortellesso to conceal his inability or failure to comply with the terms and conditions of his 1993 agreements with the third-party plaintiffs. That relationship between the conduct of Zompa and DeMelo and the harm complained of by Zanni, Roma and Ace cannot even satisfy the "but-for" test of factual causation.See Fleet National Bank v. Anchor Media Television, Inc.,45 F.3d 546, 560-61 (1st Cir. 1995). The complaint simply does not allege any facts from which the required nexus of proximate cause can be shown.
Ordinarily, the issue of proximate cause is a question for the ultimate fact-finder in a tort claim. In RICO Act cases the issue is sometimes treated as a standing question. Holmes,supra, was a petition for certiorari from a reversal and remand by the United States Court of Appeals for the Ninth Circuit of a summary judgment entered in the District Court for Holmes against the claim of the SIPC under the RICO Act. The judgment of the Court of Appeals was reversed based mainly on the failure of the allegations of the complaint to make out a right to sue under 1964 (c). See also, Schiffels v. Kemper Financial Services,Inc., 978 F.2d 344, 353 (7th Cir. 1992) (Court questions whether plaintiff has properly alleged any injury proximately caused by conspiracy to violate RICO); Chisholm v. Transouth FinancialCorp., supra, 95 F.3d, at 336 (Plaintiff must show a violation of RICO proximately caused harm). Allegations of proximate causation may be tested for sufficiency under Rule 12 (b) (6).Vance v. U.S., 355 F. Supp. 756, 761 (D. Alaska 1973).
In fraud cases in order for a plaintiff to prevail the harm which befalls the plaintiff must have been proximately caused by the false misrepresentations or fraudulent concealment of material facts by the defendant upon which the plaintiff detrimentally relied. Fleet National Bank v. Anchor MediaTelevision. Inc., supra. The counterclaim plaintiffs have not alleged that they even so much as knew about, let alone detrimentally relied on, the alleged false and fraudulent documents prepared by Zompa and DeMelo, whether or not the preparation of those documents were part of a "racketeering activity" or part of a "pattern of racketeering activity," or an act in furtherance of a conspiracy to engage in "racketeering activity."
Even adopting the "Traditional Causation Rule" of Busby,supra, this complaint fails to allege sufficient facts to show that the injury of which these third-plaintiffs complain was caused by any conduct of Zompa and DeMelo. That is especially true when the strictures of Rule 9 (b) are considered. The gist of the claims against Zompa and DeMelo is that they participated in a scheme to defraud the third-party plaintiffs. Putting aside for a moment the question whether that participation violated§ 1962, there remains the question whether the fraud has been sufficiently particularized.
While the fraud alleged to have been perpetrated by Cortellesso on the third-party plaintiff may have been alleged with sufficient particularity to satisfy Cortellesso, who does not join in the motion presently before the Court, Zompa and DeMelo, on the other hand, do argue vigorously that their part in the fraud is not alleged with any particularity. The case of NewEngland Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987) is instructive. In general, the First Circuit has strictly applied Rule 9 (b) in case in which fraud is alleged. Id. at 288. The rule applies to civil RICO claims. Id. at 289.
 "Generally, there are three purposes behind Rule 9 (b)'s particularity requirement: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit;" and (3) to safeguard defendants from frivolous charges which might damage their reputations." Id.
The holding in Becher is amplified in Feinstein v. ResolutionTrust Corp., 942 F.2d 34, 43 (1st Cir. 1991), referring to the observation in Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991) that Rule 9 (b) entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations.
While the documentary representations alleged to be false and fraudulent in which Zompa and DeMelo are alleged to have had a hand in preparing are particularized, what is not shown with any particularity is how they served to defraud the counterclaim plaintiffs. Even if it can be inferred that the allegedly false and fraudulent documents were somehow intended to be used to conceal Cortellesso's scheme to defraud the plaintiffs, that use must be particularized in some fashion, so that the objectives ofRule 9 (b) can be served. Unless the pleaders tell these defendants how their preparation of documents intended to deceive a financial institution defrauded Zanni, Roma and Ace, they cannot make a meaningful response, a potentially groundless fraud claim cannot be precluded, and Zompa and DeMelo cannot be safeguarded against frivolous charges.
Count II. The essence of the claim in Count II of the complaint against Zompa and DeMelo is contained in summary paragraph 210. Zompa and DeMelo are alleged to have conspired in violation of 18 U.S.C. § 1962 (d) with Cortellesso and others to receive income from a pattern of racketeering activity and to invest that income in an enterprise, presumably either the "Smokey Enterprise" or the Re/Max Enterprise," or both of them, in violation of 18 U.S.C. § 1962 (a). The Court has already found that the pleaders have not sufficiently alleged that Zompa and DeMelo, themselves, have violated § 1962 (a). The issue presented by this motion with respect to Count II is whether the pleaders have sufficiently alleged that they have been injured by the conspiracy in which they have been alleged to have been participants.
Of course the conspiracy itself cannot cause injury. As is pointed out in Schiffels v. Kemper Financial Services, Inc.,978 F.2d 344, 348-49 (7th Cir. 1992):
 "It is true that an agreement to violate RICO, standing alone, cannot harm anybody. Some act in furtherance of that agreement (an `overt act' in legal parlance) is necessary."
The only "overt act" alleged against Zompa and DeMelo is the preparation of false and fraudulent documents intended to deceive a financial institution. As this Court has observed, those documents could have played no part in deceiving the third-party plaintiffs nor is the part they could have played in the scheme to defraud these pleaders by Cortellesso shown anywhere in the allegations.
The pleaders do allege in conclusory terms that these third-party defendants somehow participated, as aiders and abettors, in Cortellesso's predicate racketeering activity. The pleading does not suggest how, when, where and by what means anything Zompa and DeMelo did could in any conceivable way have helped Cortellesso defraud Zanni, Roma or Ace. This Court accepts the holding inSchiffels, supra, 978 F.2d, at 352:
 "Conclusory allegations of `conspiracy' are not sufficient to state a claim under § 1962 (d); rather, Schiffels must allege facts from which one can infer each defendant's agreement to violate § 1962 (c)." (In our case § 1962 (a)).
The Court is aware of the holding Aetna Casualty SuretyCo. v. P B Autobody, 43 F.3d 1546, 1562 (1st Cir. 1994) that:
 "It is true that to find a defendant liable under § 1962 (d) one must find that the defendant conspired to violate a subsection of § 1962. It is not necessary, however, to find that each defendant knew all the details or the full extent of the conspiracy, including the identity and role of every other conspirator.
 * * *
 "All that is necessary to prove this element of the RICO conspiracy, against a particular defendant, is to prove that he or she agreed with one or more co-conspirators to participate in the conspiracy.
 * * *
 "A defendant who does not know the `entire conspiratorial sweep' is nevertheless jointly and severally liable in the civil context, for all acts in furtherance of the conspiracy."
This observation sweeps far too broadly. The counterclaim plaintiffs want the Court to hold these defendants liable for the action of Cortellesso, which took place before they became involved in the alleged conspiracy to defraud the financial institution and without any showing of any connection between that conspiracy and Cortellesso's scheme to defraud them. The only relationship between the two activities, according to the pleadings, is the participation by Cortellesso in both "schemes." Otherwise, the two "plots" are totally independent from one another so far as can be made out from the factual allegations in the pleading. The pleaders seem to recognize as much when they posit two separate, but allegedly related "enterprises," to satisfy the investment requirements of § 1962 (a).
This Court is also mindful that our Supreme Court has cautioned against "attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecution" in RICO criminal cases. State v. Porto, 591 A.2d 791, 796 (R.I. 1991) quotingState v. Patriarca, 112 R.I. 14, 40, 308 A.2d 300, 316 (1973). Without any pleading to allege the connection between the activities of Zompa and DeMelo with the scheme to defraud the counterclaim plaintiffs, no part these defendants played in conspiring to defraud the banks can be the proximate cause of any possible injury to the pleaders.
Count III. In this count the third-party plaintiffs allege that Cortellesso and the third-party defendants violated §1962 (c) by conducting or participating, directly or indirectly, in the conduct of the affairs of the two enterprises through a pattern of unlawful activity. To state a claim under §1962 (c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering. Sedima, supra, 473 U.S. at 496, 105 S.Ct. at 3285, 87 L.Ed.2d at (1985); Feinsteinv. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991). To be entitled to damages the pleader must, of course, under §1964 (c) plead that the violation of § 1962 (c) was the proximate cause of the injuries of which he or she complains.
Cortellesso does not seek at this time to dismiss the counterclaim against him. Zompa and DeMelo by their various motions do assert that no claim has been validly alleged against them, as joint defendants on the counterclaim. The only difference between this count of the counterclaim and Count I is that here it is not the investment or use of the fruit of racketeering which is the basis for the claim, but the management of the enterprises by racketeering which forms the essence of liability. Whether the defendants invested in or managed these enterprises, as alleged, it is the racketeering activity itself which must cause the injury to the claimants.
As with Count I, there is no perceivable casual relationship alleged between the injuries, which the claimants allege, and the participation by these defendants in the alleged racketeering activity. Zompa and DeMelo are alleged to have participated in attempts to defraud a federally-insured financial institution conjunctively with Cortellesso, and others, while Cortellesso and those others had previously schemed to defraud Roma, Zanni and Ace by misrepresenting Cortellesso's resources and intentions.
Count IV. This count fails to allege a claim for relief for the same reasons as Count II.
Count V. There is no allegation in this count that Zompa and DeMelo are liable to the pleaders for any violation of §7-15-2.
 Count VI. The pleaders do not allege in this count that Zompa and DeMelo conspired with Cortellesso and others to engage in the particular predicate acts of racketeering which caused injury to them. Since a conspiracy, with nothing more, cannot tortiously injure any person, a conspirator can be liable only for acts committed by the conspirators in furtherance of the conspiracy, which can cause injury. Young v. Aylesworth,supra; Schiffels v. Kemper Financial Services, Inc., supra.
At best, according to the pleadings, Zompa and DeMelo are alleged to have conspired with Cortellesso and others to defraud a financial institution in matters having nothing whatever to do with Zanni, Roma or Ace, long after the alleged scheme to defraud them, with which Zompa and DeMelo had nothing to do.Section 7-15-4 (c) contains the same "by reason of" language as does 18 U.S.C. § 1964 (c), which has been held to import tort notions of "proximate" or "legal" causation into civil RICO actions.
Ordinarily, in a tort claim the bare allegation of causation such as appears in paragraph 234 of the pleading might suffice to survive a motion to dismiss for failure to state a claim. The modern trend in civil RICO actions, nonetheless, has been to require particularized pleading either generally or especially for fraud-based claims. New England Data Services, Inc. v.Becher, supra. This Court is satisfied that such a requirement of particularity includes not only a fairly detailed description of the enterprise, the racketeering activity, and their connection, but also in a case like this one the manner in which a particular plaintiffs injury was proximately caused by a particular defendant's conduct.
The Court is satisfied that the reason § 7-15-2 in the State RICO Act does not prohibit a conspiracy to violate any of its subsections is because under Rhode Island law a conspiracy may be proved and punished even if no act in furtherance of the conspiracy is alleged or proved. State v. Sabitoni,434 A.2d 1339, 1342 (R.I. 1981). While the conspiracy to violate these sections is clearly a crime punishable under § 11-1-6,State v. Porto, 591 A.2d 791, 795 (R.I. 1991), the conspirators need not agree to participate in the racketeering activity, but they need only agree to participate in the enterprise. Id.
Since the agreement is the gist of the crime, and since no person may be tortiously injured by agreement without any other harmful conduct, the omission of conspiracy alone as a basis for civil liability under § 7-15-4 (c) becomes understandable. This count must be dismissed not only for failure to allege proximate causation with particularity but also as a matter of law because there is no civil RICO liability underG.L. § 7-15-4 (c) for conspiracy to violate § 7-15-2.
 Count VII. No relief is sought from Zompa and DeMelo in this count.
Count VIII. This count purports to allege a claim against Zompa and DeMelo pursuant to G.L. § 9-1-2 for conspiring "to conspire to commit various crimes in violation of Rhode Island law" and for the commission "such criminal acts." It is alleged that the pleaders were damaged "thereby." A conspiracy to conspire, while elusive as a practical concept, is, nonetheless theoretically comprehensible. "When shall we three meet again?"Tragedie of MacBeth, Shakespeare, Act I, Scene 1, Line 1. If it is impossible to harm anyone by an agreement without conduct, it must also be impossible, a fortiori, to cause harm by an agreement to agree. There no allegation in this count that Zompa and DeMelo participated in any of the criminal violations alleged against Cortellesso and others, except in relation to an attempt to defraud a financial institution. There is no allegation beyond the word "thereby" that, or how, the pleaders were harmed by that alleged attempt. Nor is there any allegation that, or how, Zompa and DeMelo participated in the fraud alleged to have been perpetrated by Cortellesso and others on these pleaders. The omission of any fraud claim against Zompa and DeMello, considered in the light of Rule 11 of the Rules of Civil Procedure, is an eloquent silence. This count, also, must, accordingly, be dismissed for failure to allege proximate causation with sufficient particularity.
VI.
Conclusions
It is not easy to decide to dismiss a party's claims for failure to state a claim for relief in a pleading. The disfavor in which such a disposition is held is clear and emphatic. The benefit of doubt must always be accorded to the pleader. The Court must be certain that no evidence in support of the allegations in the pleading will justify a favorable result for the pleader under any theory of law. The moving party who seeks so early a resolution has an almost insuperable burden.
However great may be the motivation to let justice emerge from the clash of advocacy at a trial on the merits, the Court cannot turn a blind eye to the costs of litigation to the parties. It cannot be fair to require that these defendants must bear the economic and psychological costs, including the expense of counsel, to engage in pretrial discovery, preparation for trial and even trial itself, when their opponents do not so much as show how they were harmed by anything these defendants did. Occasionally the tensions implicit in the principles under-girding Rules 8 (a), 9 (b) and 12 (b) (6) resolve themselves favorably to the accused.
To this Court, justice demands that, until these pleaders tell these accuseds how any of their wrong-doing hurt the pleaders, this case shall not go on.
For all the foregoing reasons all claims against Zompa and DeMelo will be dismissed for failure to state claims upon which relief may be granted, unless the counterclaim plaintiffs amend Counts I, II, III, IV and VIII of the counterclaim within thirty days from the entry of an order pursuant to this decision. Count VI may not be amended. Judgment of dismissal without leave to amend may enter on that count. That judgment is not, however, a final judgment as referred to in Rule 54 (b).
The defendants Zompa and DeMelo may enter an Order and Judgment on four court day's notice to all other parties.